POST & McCORD, INC., Respondent, *v.* NEW YORK MUNICI-
PAL RAILWAY CORPORATION, Appellant.

First Department, April 4, 1919.

Contract — indemnity agreement between contractor, elevated rail-
way company and street surface railway company construed —
liability of contractor for accident caused by negligence of motor-
man of street railway company — waiver of jury — right to
exception upon denial of motion for direction of verdict.

In an action in replevin to recover certain bonds together with damages
for retention thereof, which were deposited by plaintiff with defendant
for the faithful performance of a contract for the construction of a section
of an elevated railway, it appeared that the elevated railway was con-
structed over the tracks of a street surface railway company and that
the latter company had been held liable for personal injuries to a passenger
on the theory that its motorman was guilty of negligence in attempting
to pass under the arm of a crane which the plaintiff was using, and that
the defendant admitted its liability to the street surface railway company
and settled the claim without litigation.

*Held*, that the accident comes fairly within the plaintiff's contracts to
indemnify the street surface railway company and the defendant, and
that, therefore, the defendant cannot be held to have converted the
plaintiff's bonds.

It was intended by a stipulation at the commencement of the trial waiving
a jury that the party whose motion for a direction of a verdict should
not be granted should have an exception.

APPEAL by the defendant, New York Municipal Railway
Corporation, from a judgment of the Supreme Court in favor
of the plaintiff, entered in the office of the clerk of the county
of New York on the 26th day of July, 1918, upon the verdict
of a jury rendered by direction of the court.

*Charles L. Woody* of counsel [*George D. Yeomans*, attorney],
for the appellant.

*Charles Capron Marsh* of counsel [*Marsh & Wever*, attorneys],
for the respondent.

LAUGHLIN, J.:

At the commencement of the trial the parties, by stipulation,
waived the presence of a jury and agreed that the court,

at the close of the evidence, might direct a verdict. Questions of law only are presented on the appeal.

This is an action in replevin to recover certain bonds, together with damages for the retention thereof, which were deposited by the plaintiff with the defendant, in lieu of a bond, for the faithful performance by the plaintiff of all covenants, conditions and requirements specified and provided for in a contract, in writing, made by the parties, on the 18th of March, 1915, by which the plaintiff agreed to construct for the defendant the foundations and structure of section 1 of the Jamaica Avenue Elevated Line of Railway, being part of contract No. 4, entered into between the defendant and the city of New York, through the Public Service Commission for the First District, on the 19th day of March, 1913. It was provided in the contract that, in the event of the failure of the contractor to comply with the terms thereof, the defendant should be at liberty to apply the securities so deposited to reimburse it for any liability or expenses incurred by it in consequence of the default of the contractor, and that upon certification by the engineer of the defendant that the contractor shall have fully completed the work, defendant should redeliver to the contractor the unused securities that shall not have been reserved as otherwise provided in the contract. It was further provided that if, when the contractor should otherwise be entitled to the return of the securities, there should be pending any claim for injury to person or property " occurring on account of the work hereunder, whether by reason of the negligence, fault or default of the contractor or otherwise,  *  *  *  or any other claim on account of any neglect, fault or default of the contractor, for which it shall or may be claimed that the Company [meaning defendant] shall be liable, then and in that case " the securities deposited, or such part thereof as the company may deem proper, " may be reserved by the Company as security against such claims for a time not exceeding the time when such claims would be legally barred." It was further provided that if and when the liability of the company should have been established by judgment or the claim should have been admitted by the contractor to be valid, the company might deduct the amount thereof from the securities deposited

before returning the balance, and for that purpose might sell the securities as therein provided.

The plaintiff entered upon performance of the work and the engineer of the defendant duly certified that it was completed on the 10th day of January, 1917. The conversion of the bonds is predicated on the defendant's failure to deliver them to the plaintiff on demand therefor duly made on the 12th day of March, 1917. The demand was refused on the ground that the defendant claimed to be entitled to be reimbursed by the plaintiff for the sum of $16,664.67, the amount paid by it on the 9th day of March, 1917, to the Brooklyn, Queens County and Suburban Railroad Company in satisfaction of a claim made against it by said company for reimbursement for the amount paid by said company in satisfaction of a judgment recovered against it by one Smith for personal injuries sustained by him on the 21st day of January, 1916, while a passenger in one of its cars which collided with the arm of a crane in use by the plaintiff in the performance of the contract work.

The Brooklyn, Queens County and Suburban Railroad Company was operating a street railway double-track line on the surface of Jamaica avenue, and the elevated railway was constructed over its tracks supported by columns resting on foundations in the street. In the action in which the recovery was had by Smith the plaintiff was joined as a defendant and was charged with negligence, but the jury exonerated it and rendered a verdict against the street railway company only, evidently on the theory that its motorman was guilty of negligence in attempting to pass under the arm of the crane which was extended over the track on which the car in which Smith was riding passed. It does not appear that either party hereto was vouched into that action to defend the street railroad company and, therefore, upon no theory was either party bound by the recovery against it therein. The defendant, however, admitted its liability over to the Brooklyn, Queens County and Surburban Railroad Company, and without litigation settled the claim. On the trial in this action the plaintiff offered in evidence the contract between it and the defendant, and a stipulation in writing in respect to certain facts, and the testimony given on the trial

First Department, April, 1919. [Vol. 187.

of the action brought by Smith, which was read from the printed record on appeal in that action; but it was expressly understood that such testimony was received only to inform the court how the accident happened and the circumstances surrounding it, and not for the purpose of raising anew in this case any question of negligence. The contract between the plaintiff and the defendant, so far as here material, provided that the contractor would be permitted to conduct the work in the most expeditious manner possible, having due regard to the maintenance of continuous traffic on all railroads affected by the work, and for the safety of persons and property, and under such instructions as the defendant's engineer might give from time to time, but that the contractor should furnish all necessary facilities for the benefit of street travel, and assume the risks and losses from interferences with the work and delays from any source or cause; and it was further therein provided as follows:

" An essential requirement of the first importance in the performance of the work of this contract shall be at all times the protection and safety of persons and property, including the passengers, employees and property of existing elevated and surface railroads, and the Company has explained and the Contractor understands and admits that the greatest care and skill will be constantly required to meet the hazards of the undertaking and to assure such protection and safety. In addition, therefore, to all other requirements of this contract the Contractor assumes the risks of and shall be solely responsible for any and all injury or damage to persons or property, including but not limited to passengers, employees and property of existing elevated and surface railroads, whether due to or occurring on account of or in connection with the character of the undertaking or the performance or methods or processes in the performance of the work, or due to or occurring on account of or in connection with any negligent or wrongful act or omission of the Contractor or of any sub-contractor of the Contractor or of any officer, agent or employee of either, or due to or occurring on account of or in connection with the supplying of material used or furnished by the Contractor or with any difficulty, disturbance or interference in the performance of the work, and the Con-

tractor covenants and agrees to protect, indemnify and save the Company and the owner, lessee or operator of any such existing elevated or surface railroad wholly harmless against any and all loss, expense or liability or claim of liability of every kind on account of or in connection with any such injury or damage."

The tracks of the Long Island Railroad Company, which was operated by electricity, crossed this avenue at Diamond street on an overhead structure; and the defendant's railway was to cross above it. It was contemplated that the elevated road should be constructed in sections or panels, and that a traveling crane on the track on the structure should be used for elevating the material and putting it in place. It was recognized that the electric wires and cables of the Long Island Railroad Company, as then placed, would obstruct the passage of the traveling crane at the point of crossing. The contract provided that the contractor should bear the expense of the temporary alteration of the wires and cables of the Long Island Railroad Company to permit the passage of the traveling crane, but it was provided that the defendant should, at its own expense, attend to the permanent relocation thereof. Notwithstanding this express provision for the temporary removal of the wires and cables by the contractor it appears that it was expected that before the contractor reached that point in the construction of the elevated railroad, the defendant, through negotiations with the Long Island Company and under the supervision of the Public Service Commission, would have the wires and cables permanently relocated so as not to interfere with the progress of the work in the manner stated. This, however, the defendant failed to do, and it was found impracticable to change the location of the wires and cables temporarily. When the construction reached this point the plaintiff complained that the defendant had not permanently relocated the wires and cables as contemplated. The defendant claimed that under the strict construction of the contract the plaintiff had assumed responsibility for removing the wires and cables temporarily to enable the work to proceed, but admitted that the plaintiff was justified in assuming that the wires and cables would be permanently relocated before the construction reached that

point. It was recognized that the wires and cables could not be removed for some months and that the practical course to pursue was to dismantle the traveling crane with a view to erecting it again on the completion of three sections on the other side of the Long Island railroad tracks, and that in the erection of the three sections a ground crane on wheels on the street railroad surface track should be used. This involved the construction of two cross-overs connecting the street railway tracks to permit the street railway traffic to be conducted on one of the tracks, the ground crane being on the other. The plaintiff insisted that the entire expenses incident to this should be borne by the defendant, and the defendant, without then denying or admitting liability therefor, suggested that the plaintiff proceed with the work, keeping track of the cost, which would be supervised and certified by a representative of the defendant, and that course was pursued. For that purpose the plaintiff hired of the defendant, on a per diem basis, a ground crane or derrick, with the understanding, however, that the plaintiff was to arrange for the use therefor on the tracks of the Brooklyn, Queens County and Suburban Railroad Company, and that the plaintiff would " be responsible for all damage which may occur in connection with " its use of the crane or derrick. One Lohman was the plaintiff's foreman in charge of the steel construction and of the operation of the crane which was placed on one of the surface tracks. He determined to hoist a steel girder, which would involve obstructing the traffic on the other street railway track. A flagman had been employed by the street railroad company at either cross-over at the expense of the plaintiff, and it had likewise employed one Martin as an inspector.

Lohman and Martin were sworn on the trial of the Smith action, and on the trial of this action Lohman says in substance that when he announced his intention of hoisting the girder Martin told him to go ahead. But Martin says that he told Lohman not to go ahead until he had blocked the traffic by notifying the flagman. The inspector first went to the west and notified the flagman there. The flagman to the east was not at his post but was at the time supervising, some distance away, the unloading of steel for the plaintiff. Martin,

however, was not aware of this and before he was able to go to the east to notify the flagman, whom he supposed was there, a car came from the east and the upper edge of it crashed into the arm of the crane causing the injuries to Smith.

Jamaica avenue at the point in question was originally laid out, maintained and operated by the Brooklyn, Jamaica and Flatbush Turnpike Company, an incorporated turnpike or plank road company. The defendant offered evidence tending to show, and from which it is claimed, that the Brooklyn, Queens County and Suburban Railroad Company owned the fee of Jamaica avenue through title derived from the turnpike corporation and its successors in interest. On that theory, doubtless, an agreement was negotiated and verbally agreed upon between the defendant and said company with respect to the construction of the elevated railroad prior to the making of the agreement between the plaintiff and the defendant for the work of construction, but it was not formally executed until May 1, 1915. By that contract the defendant agreed to construct and maintain the elevated railroad " in such manner as to avoid and prevent all unnecessary interference with the safe, uninterrupted, continuous and efficient operation and maintenance of the surface railroad of the Railroad Company, and the Railway Corporation [this defendant] shall protect and save the Railroad Company harmless of and from any and all cost and expense on account of the performance of such work or the construction and maintenance of said elevated railroad." It does not appear what negotiations, if any, were had between the Brooklyn, Queens County and Suburban Railroad Company and the defendant at the time the permission of the former was obtained for putting in the crossovers and using its tracks as stated. Perhaps, already having the formal contract from which I have quoted, it was not deemed necessary to make any further agreement for the protection of the surface street railway company. There is no evidence that the plaintiff was aware that the defendant had made this formal contract with the surface street railway company, but it was chargeable with the knowledge that the execution of this work, and particularly the work that was being done at the time of the accident, would require the consent of the street railway company, and it might well

have anticipated that an indemnity agreement such as had been made would become necessary.

The learned counsel for the appellant contends that no question of negligence is here involved and that the sole point presented for decision is whether the plaintiff under the original agreement and the supplemental agreement, evidenced by a letter from which I have quoted, contracted to indemnify the surface street railway company and the defendant against such a liability as the accident for which the recovery was had by Smith. The principal argument against such construction seems to be that the agreement should not be construed as obligating the plaintiff to indemnify either the surface street railway company or the defendant against their own negligence. But in the case of *Long Island Railroad Co.* v. *American Bridge Co.* (175 App. Div. 170), which has recently been affirmed by the Court of Appeals (225 N. Y. 692), it was held that it is not necessary that there should be an express agreement to indemnify against the negligence of the party to whom the agreement runs in order to warrant a construction that it was so intended. In that case the terms of the indemnity agreement were not materially different from these now before the court and it was held that the plaintiff was entitled to recover from the contractor the amount of a judgment recovered against it for its own negligence in the operation of a train by which an employee of a subcontractor was injured while the train was passing the construction work embraced in the contract. No negligence on the part of the defendant was shown, but the accident would not have happened had it not been for the construction work which the contractor was engaged in performing. The court placed a broad construction on the indemnity agreement and held that it was intended to indemnify the plaintiff against any liability arising out of the performance of the work. In the case at bar the surface street railway company had a right, as a condition of consenting that the work might be done in this manner, to exact an agreement to protect it against any accident incident to this construction work even though contributed to or caused solely by the negligence of its own employees, for the construction work presented additional dangers of accidents, and it was not required, with respect

thereto, to assume the risk of the failure of its employees at all times to exercise ordinary care. The defendant, evidently knowing that it had an agreement with the surface street railway company, by which it was to indemnify the latter against liability arising from the construction work, exacted from the plaintiff, both for itself and for the surface street railway company, a broad contract of indemnity. I am of the opinion that the accident in question comes fairly within the plaintiff's agreements to indemnify the surface street railway company and the defendant. The defendant, therefore, was within its rights, under the contract, in withholding the bonds and cannot be held to have converted them.

It was intended by the stipulation waiving a jury that the party whose motion for a direction of a verdict should not be granted should have an exception, although, evidently through inadvertence, the record states that the party in whose favor the verdict was directed should have an exception.

It follows that the defendant's motion for a direction of a verdict should have been granted. The judgment, therefore, should be reversed, with costs to appellant, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.