Arthur Wachtel, J.
On May 20, 1958, the plaintiff, Ruth Jones, fell in the roadway in front of 855 Kelly Street, The Bronx, and brought this action thereafter against the City of New York by reason of the injuries she sustained.
Her claim was that the defendant, City of New York, was negligent in permitting a hole to remain in the roadway. The city, in turn, instituted a third-party action against Clem Construction Corp. (hereinafter called Clem) asserting an indemnity agreement contained in the contract executed between the city and Clem.
The ease was submitted to the jury in respect of the plaintiff’s claim against the City of New York and upon the question of fact involved in the main ease as to the negligence of the defendant, the City of New York. Without objection of either side the question as to the right of the city to judgment over against Clem upon the basis of the indemnity agreement was reserved for the court. Inasmuch as a question of fact had been raised as to the location of the hole involved, the court submitted to the jury the following question: “ Was the hole where the plaintiff fell located within the area of construction performed by *371 Clem- Construction CorpJ ” The jury returned a verdict in favor of the plaintiff against the city in the sum of $1,000, and answered the question in the affirmative.
Clem Construction Corp. has moved to dismiss the third-party complaint. Upon this motion decision was reserved. After determining the question as to the construction of the indemnity agreement, the court has come to the decision that the third-party plaintiff, the city, is entitled to judgment over against Clem in the amount found by the jury in favor of plaintiff and against the city, namely in the sum of $1,000.
The contract involved in this case was for the laying of water mains in the roadway in Kelly Street in the Borough of The Bronx, City of New York. Mr. Erde, the city’s engineer, testified that a trench was opened on April 4, 1958, and refilled the same day by Clem; that barricades had been placed around the trench during the construction, and were removed after it was backfilled. The entire block of Kelly Street between Intervale Avenue and Longwood Avenue was backfilled by Clem and thereafter, on April 25, 1958, the city’s engineer notified the Borough President of the repavement required. Between April 25 and May 20, the day of the accident, no repaving had been done by the Borough President’s office. Thus, the trench opened by Clem and backfilled by Clem on April 4, continued in such state without barricades up to the time of the accident, namely on May 20.
. The city argues that the contractor continued to remain responsible for the area affected by the excavation work for a period of 30 working days after the filing of such notice on April 25, namely until July 10, 1958, and accordingly, on May 20, the date of the accident. The provision relied upon is as follows: “ Within three working days after the Contractor shall have backfilled the excavation and placed the temporary pavement on a section of one block or more, he shall so notify the Borough President and file a copy of such notice with the Engineer. If the Contractor fails to file such notice, the Engineer may do so on his behalf. The Contractor shall remain responsible for the area affected by such work including the temporary pavement for the period of thirty working days after the filing of such no tice.’ *
Clem argues that this 30-day provision does not apply because it applies only to intersections where both backfilling and temporary pavement were required and not to trenches dug in the middle of the block, as in the case at bar. However, there is no such limitation in the contract. The contract provides generally:
*372 “ If the pavement along the sides of the trench is or becomes undermined, the Contractor shall break down and remove such pavement together with the pavement foundation, loose earth and rock, before placing the temporary pavement, and he shall place and compact the necessary backfilling and relay the pavement so undermined.
“ Temporary paving. On paved streets, as soon as the trench has been refilled, the paving shall be temporarily replaced by the Contractor.
“ The temporary pavement, of whichever kind, shall be so laid as to carry traffic safely, and shall be maintained by the Contractor until the Borough President assumes the responsibility for its maintenance.”
The attorney for Clem proceeds to argue: “ In any event the City was notified that the trench was ready for pavement on April 4, 1958, some six weeks before the accident.” This presupposes that the 30-day period commenced from the backfilling of each trench. The contract requires that the notice must be filed with the Borough President within 30 working days “ after the contractor shall have backfilled the excavation ’ ’. The 30-day provision was imposed in order to give the Borough President an opportunity to determine the ‘ ‘ total quantities of the various kinds of pavements to be replaced”, and the cost thereof. (Par. 9, “Pavements under the jurisdiction of the Borough President” found under “ Standard Watermain Specifications ”, pp. 55-56.) The position taken by the city’s engineer was that he was required to and did file his notice with the Borough President only after the entire block had been backfilled, and this is a reasonable interpretation of the contract.
Accordingly, the court concludes that the obligation of Clem under its contract was to maintain barricades to and at the time of the accident. By the concession of the city the sole question involved is whether the city has a right of indemnity as a matter of the fair and reasonable interpretation of the terms of the contract by Clem, and whether the loss occurred by reason of the failure of performance thereof. Accordingly, the court will not consider the arguments also raised by the city and the cases cited by the city in respect of the situation where there is an active-passive tort-feasor relationship or a question of relative delinquency between the city and the contractor.
The failure to provide barricades at the time of the accident was a failure to perform a provision of the contract, and plaintiff sustained injury by reason of this failure of Clem to comply with the provisions of the contract. It was precisely such an *373 accident against which the city sought to be indemnified by the contractor and which the contractor reasonably anticipated and agreed to guard against. Article 7 provides as follows:
“Article 7. Protection of Work and of Persons and Property. During performance and up to the date of final acceptance, the Contractor shall be under an absolute obligation to protect the finished and unfinished work against any damage, loss or injury; and, in the event of such damage, loss or injury, he shall promptly replace or repair such work, whichever the Engineer shall determine to be preferable. The obligation to deliver finished work in strict accordance with the contract prior to final acceptance shall be absolute and shall not be affected by the Engineer’s approval of or failure to prohibit means and methods of construction used by the Contractor.
“ During performance and up to the date of final acceptance, the Contractor must take all reasonable precautions to protect the persons and property of others on or adjacent to the site from damage, loss or injury resulting from his or her subcontractor’s operations under this contract, except such property as the owners thereof may themselves be under legal duty to protect. The Contractor’s obligation to protect shall include the duty to provide, place and adequately maintain at or about the site suitable and sufficient guards, lights, barricades and enclosures.
“ Within three days after notice to him of the happening of any such loss, damage or injury to work, persons or property, the Contractor shall make a full and complete report thereof in writing to the Engineer.
“ If the persons or property of others on or adjacent to the site sustain loss, damage or injury resulting from the negligence or carelessness of the Contractor, or his subcontractors, in their performance of this contract, or from his or their failure to comply with any of the provisions of this contract or of law, the Contractor shall indemnify and hold the City harmless from any and all claims and judgments for damages and from costs and expenses to which the City may be subjected or which it may suffer or incur by reason thereof. ’ ’
The third-party defendant seeks to make a distinction between the first paragraph where the word “ absolute ” is used and the paragraph containing the indemnity agreement. This argument is untenable. They are both part and parcel of the same article 7 of the contract. There is nothing ambiguous about article 7 when read as a whole, nor did the third-party defendant offer any testimony on the theory that there was any ambiguity to resolve.
*374 In the opinion of the court, this case comes within' the purview of Jordan v. City of New York (3 A D 2d 507, affd. 5 N Y 2d 723) and Salamy v. New York Cent. System (1 A D 2d 27). The indemnity agreement in this case is enforeible even though the city was negligent, regardless of whether the contractor was or was not negligent, by a fair construction of the terms of the indemnity contract. The indemnity agreement provides that if a person “ on or adjacent to the site of the excavation sustained injury resulting from the contractor’s failure to comply with any of the provision of this contract or of law, the contractor shall indemnify and hold the City harmless from any and all claims and judgments for damages and from costs and expenses to which the City may be subjected or which it may suffer or incur by reason thereof.” The phrase “ failure to comply with any of the provisions of this contract ’ ’ embraces all the provisions of the contract including the entire portion of article 7, directly preceding the paragraph containing the indemnity agreement. Here is an absolute obligation on the part of the contractor to protect the finished and unfinished work against any damage, loss or injury during performance and up to the date of final acceptance.
The date of final acceptance in this case was June 9, 1958. This absolute obligation is not affected by the engineer’s approval. As further explanation of the contractor’s obligation, article 7 provides that during-performance and up to the date of final acceptance the contractor must take all reasonable precautions to protect the persons of others on or adjacent to the site from injury, and more specifically this obligation includes ‘ ‘ the duty to provide, place and adequately maintain at or about the site suitable and sufficient guards, lights, barricades and enclosures
The third-party defendant relies on Thompson-Starrett Co. v. Otis Elevator Co. (271 N. Y. 36) as authority for the proposition that ‘1 a contract will not be construed to indemnify a person against his active negligence unless such intention is expressed in unequivocal terms”. However, 11 This does not mean, in order to warrant a construction, that it was so intended, that the contract must contain express language referring to the negligence of the indemnitee ”. (Valente, J., Jordan v. City of New York, supra, p. 509.)
This is not merely a general indemnity ‘ ‘ against all claims for damages ” to persons “ growing out of execution of the work”, as in the Thompson-Starrett Realty Co. case (supra) or “ by reason of any injury to any person * * * resulting from any action or operation under this contract,” as in the *375 Semanchuck v. Fifth Ave. & 37th St. Corp. (290 N. Y. 412; cf., also, Walters v. Rao Elec. Equip. Co., 289 N. Y. 57). The indemnity agreement in the case at bar is based upon the “ absolute ” obligation of the contractor to safeguard the excavation work which the contractor performed and provide barricades at or about the site of the excavation up to the date of final acceptance, and to provide the safeguards necessary to prevent just such an accident as occurred in the case at bar by reason of the existence of a hole at or near the site of the excavation.
Accordingly, this is analagous to the indemnity agreement in Jordan v. City of New York {supra). As the court in the Jordan case pointed out: “ Looking first generally to the contract in issue, it is manifest that it does not contemplate the city’s taking an active part in the construction work in the sense that the city is to perform any of the work. Standing alone this does not afford the city any basis of recovery over because of the holding in the Walters [Walters v. Rao Elec. Equip. Co., 289 N. Y. 57] and Semanchuck [Semanchuck v. Fifth Ave. & 37th St. Corp., 290 N. Y. 412] eases. It is, nevertheless, important in shedding light on what the parties intended to include in the indemnification provisions ” (p. 510).
And so in the case at bar, a reading of the entire contract and the additional provisions referred to herein bring us to the same conclusion as the court reached in the Jordan case: “ The contract pattern and the words in the quoted portions of the indemnity provisions here are clear. The scope of the indemnity is comprehensive. The manifest intent of the contract is to provide absolute indemnity to the city for injuries sustained by any person in the course of the work, inclusive of any caused by the city’s active negligence — common-law as well as statutory. We conclude that the intent of the respondent to indemnify the city against its own negligence is ‘ unequivocally expressed’”. (Jordan v. City of New York, supra, p. 512 [Valexte, J.].)
Of particular significance is the language of the court in Salamy v. New York Cent. System (supra, p. 29): “ The intention is the thing which must appear clearly and unequivocally, however, and the agreement need not contain express language referring to the negligence of the indemnitee. The requirements of the rule are met if such an intention may be clearly implied from the language, the purposes of the agreement, and all the surrounding facts and circumstances. This is particularly - so when the subject-matter of the agreement deals with a specific dangerous condition, and recognizes* as foreseeable, an increased *376 risk and the enlarged possibility of actual or claimed negligence of employees of the indemnitee. (Langelotti v. City of New York, 268 App. Div. 1061, affd. 296 N. Y. 941; Post & McCord v. New York Municipal Ry. Corp., 187 App. Div. 167, affd. 230 N. Y. 540; Westinghouse, Church, Kerr & Co. v. Long Island R. R. Co., 160 App. Div. 200, affd. 216 N. Y. 697.) ” And as the court in the Salamy case pointed out at page 30, so in this case the tenor of the agreement as a whole “ the purposes, benefits, needs and risks of. the parties thereto, all point to the conclusion that the parties intended, contemplated and understood ” that the entire excavation work was to be performed by the contractor, that it was to open the street for such purpose, and to backfill the excavation it dug up, and that it was to assume the absolute obligation of providing safeguards up to the time of final acceptance, and during that time the city was to expose itself to no risk to answer in damages for injuries sustained at or near the work performed by the contractor, resulting from the failure of the contractor to perform this absolute obligation, even though the city may be held liable in negligence upon its duty to maintain the streets in a reasonably safe condition.
The court, in the Thompson-Starrett Co. case (supra) pointed out that in construing the contract: ‘ ‘ There must be taken into account the intent of the parties, as expressed in the contract and as indicated by the nature and extent of the work to be performed under the contract ”. The question is whether the indemnity for the accident in question was “ within the contemplation of the parties as indicated by their contract ” {Thompson-Starrett Co. v. Otis Elevator Co., supra, p. 43) and distinguished the facts of its case from those of Post & McCord v. New York Municipal Ry. Co. (187 App. Div. 167, affd. 230 N. Y. 540); Westinghouse, Church, Kerr & Co. v. Long Is. R. R. Co. (160 App. Div. 200, affd. without opinion 216 N. Y. 697), and Long Is. R. R. Co. v. American Bridge Co. (175 App. Div. 170, affd. without opinion 225 N. Y. 692). The court pointed out that ‘ ‘ In each of these cases the indemnitor was a general contractor who had charge of and responsibility for all the work, connected with the erection of the structure ” (p. 42); and furthermore, in the case of Long Is. R. R. Co. v. American Bridge Co. (supra) “ the defendant contractor had specifically assumed the duty of guarding against injury to workmen, a duty in which it failed. The claim came, therefore, within the express terms of the contract of indemnity and its enforcement was proper, despite negligence on the part of the indemnitee ” (p. 42).
Accordingly, the motion of the third-party defendant to dismiss the third-party complaint is denied, and judgment is *377 directed in favor of the third-party plaintiff and against the third-party defendant for the amount of the judgment against the third-party plaintiff. Submit findings of fact and conclusions of law. Exhibits may be obtained at the Clerk’s office.