LAWRENCE J. CAVANAUGH, Plaintiff, *v.* C. P. BOLAND Co., INC., and Another, Defendants.

Supreme Court, Rensselaer County, November 25, 1933.

*Leary & Fullerton,* for the plaintiff.

*Murphy, Aldrich & Guy,* for the defendant C. P. Boland Co., Inc.

*Joseph A. Byrne,* for the defendant Manhattan Fireproofing Co., Inc.

SCHENCK, J.   The plaintiff, an employee of defendant Manhattan Fireproofing Co., Inc., instituted this action against the defendant C. P. Boland Co., Inc., the general contractor for the erection of an addition to St. Joseph's Seminary building, in Troy.   The defendant Manhattan Fireproofing Co., Inc., was a subcontractor. The accident which resulted in the injuries to plaintiff occurred July 14, 1932, when a container loaded with concrete fell off the platform of a material hoist and through a protecting roof, under which plaintiff was standing at the time.

Subsequent to the commencement of the action an order was made by Mr. Justice RUSSELL bringing in the Manhattan Fireproofing Co., Inc., as a party defendant, and permitting the Boland Company to issue and serve supplemental summons with a pleading setting forth the alleged liability of the Manhattan Company to reimburse the Boland Company for such sum as the plaintiff might recover against it.   Pursuant to the terms of said order a supplemental summons and cross-complaint were served upon the Manhattan Company by the Boland Company, to which the Manhattan Company served its answer.

At the time of the trial it was stipulated by the attorneys for the defendant that the question of the right to reimbursement claimed by defendant Boland Company against defendant Manhattan Company, for any judgment which plaintiff might recover against the defendant Boland Company, should be submitted to the court for its determination and that such question should not be submitted to the jury.

On the trial of this action there was submitted to the jury only the question of the right of the plaintiff to recover against the defendant Boland Company, and the jury was expressly instructed that it had no right to consider any question as to the liability of the defendant Manhattan Company, as no claim was made

against the Manhattan Company in the plaintiff's complaint. The jury returned a verdict of $8,000 against the Boland Company.

From the evidence produced upon the trial it appeared that the Boland Company, as general contractor for the erection of a chapel building for the Society of the Sisters of St. Joseph, entered into a subcontract with the Manhattan Company, whereby the Manhattan Company was to perform certain work, including the installation of a concrete roof upon a portion of the building. In the construction of said concrete roof, it was necessary to hoist concrete from the ground level, where a concrete mixer was located. The Boland Company had constructed two material hoists, one on the south side and one on the north side of the building in the course of erection. On July 12, 1932, pursuant to its agreement with the Boland Company, the Manhattan Company commenced the work of constructing the concrete roof, making use of the material hoist on the south side of the building, on which material hoist, containers, commonly called "buggies," filled with concrete, were hoisted to the roof level.

It further appeared upon the trial that the engine which supplied the power to lift the material hoist and the concrete mixer in which the concrete was mixed were operated by the Manhattan Company, and that the workmen engaged in filling the containers from the concrete mixer and placing the same on the material hoists were all employed by the Manhattan Company on the day of the accident.

The original contract entered into between the Boland Company and the Manhattan Company contained this provision: " 6. That you save harmless the person giving this order from all liability to any person whomsoever by reason of any neglect on the part of yourself or your employees, or by reason of any defect in the supplies or materials furnished, or by reason of any neglect on the part of yourself or your employees in the doing of the work which is ordered. Certificates of insurance to be filed with C. P. Boland & Co."

The contract is dated October 31, 1931. Thereafter, under date of March 17, 1932, the Manhattan Company wrote the Boland Company with reference to the use of the material hoist and other equipment belonging to the Boland Company, as follows:

" C. P. BOLAND & COMPANY,
    " 30 Fourth Street,
        " Troy, N. Y.

" GENTLEMEN: We are writing to confirm our agreement with you to supply us without charge the use of your hoisting equipment, scaffolding, plank, concrete mixer, wheel-barrows, buggies and

miscellaneous equipment which you have on the St. Joseph's Chapel job, for our use in carrying out our contract with you. We are to pay only the cost of the engineer for operating same.

"Very truly yours,

"MANHATTAN FIREPROOFING CO. INC.,

"FCW/B.             F. C. WITSELL, *Pres.*"

To this letter the Boland Company replied under date of March twenty-third as follows:

"MANHATTAN FIREPROOFING CO. INC.,

"103 Park Avenue,

"New York City

"GENTLEMEN: Att. F. WITSELL, *Pres.* We do not accept your letter of the 17th as to furnishing you all your plant on the St. Joseph Chapel Building, Troy, N. Y. Without modifying our contract with your Company we are willing you should have the use of the Hoist and Elevator, runways and concrete mixer, we now have on the job without any renting expense.

"Your company is to assume any loss by accident or otherwise when same is in your charge without any expense to us, employing proper men to operate same.

"Very truly yours,

"C. P. BOLAND & CO.

"CPB: ACB             C. P. BOLAND."

The Boland Company contends that by virtue of its agreement with the Manhattan Company evidenced by these two letters, the Manhattan Company assumed all liability for any loss or damage which might occur in any manner while this hoist was being operated by it.

It would appear that when the Manhattan Company made use of this material hoist after the receipt of the letter of March twenty-third from the Boland Company, it agreed to the conditions there imposed.

The Boland Company was the general contractor. It was "the master of the enterprise." It was liable in the first instance for the use and operation of the hoist and for the violation of its duties in furnishing for use or using a material hoist that had not been properly constructed or one which was out of repair, or by placing material or articles upon the hoist that were liable to fall. To escape any of these duties it must have imposed such duty upon the subcontractor and given up all control and superintendence. (*Hooey* v. *Airport Construction Co.*, 253 N. Y. 486; *DeLee* v. *Pardy Construction Co.*, 249 id. 103; *McGlone* v. *Angus, Inc.*, 248 id. 197.)

If the Boland Company can show that any of the duties for the performance of which it was responsible had been shifted to the subcontractor, it is excused from the performance of such duty and thereby escapes liability for such non-performance.

The defendant Manhattan Company was operating and using this hoist at the time of the accident under an agreement with the Boland Company. In the use and operation thereof the Manhattan Company could not escape liability, except in the case of a latent defect not discoverable by a proper inspection, for it was its duty to inspect, repair and, if necessary, reconstruct the hoist before using it.

The plaintiff in this case was not injured by reason of the falling of the hoist, nor may it be found in the evidence, by reason of any structural defect that could not be ascertained upon a proper inspection. The injuries sustained by plaintiff resulted from a two-wheeled concrete " buggy " containing several hundred pounds of concrete falling from the material hoist while the same was being operated.

When the Manhattan Company made use of this hoist after the receipt of the letter from the Boland Company, it assumed the responsibility incident to the operation thereof. In imposing the conditions contained in the letter, it was the obvious intention of the Boland Company to shift its duties in respect to the use and operation of this hoist to the Manhattan Company, thereby relieving itself from liability.

In *Dudar* v. *Milef Realty Corp.* (258 N. Y. 415) a contract between the property owner and the contractor provided: " Should any person, or persons, or property be damaged or injured by the Contractor, or by any person, or persons, employed under him, in the course of the performance by him of this agreement, or otherwise, whether by negligence or otherwise, said Contractor shall alone be liable, responsible and answerable therefor and does hereby agree, to and with said Owner to hold harmless and indemnify the Owner, of and from all claims, suits, actions, costs, counsel fees, expenses, damages, judgments or decrees by reason thereof."

The court there held that the contractual obligation was intended to relieve the owner from liability for injuries suffered by any person in the course of the performance of work by the contractor.

Judge LEHMAN, writing for the court (at p. 422), said: " Here liability of the defendant owner and general contractor arises from its failure to protect the plaintiff adequately from the danger which might reasonably be apprehended from the operation of the hod hoist. It did not participate in the negligent operation of the

hoist. Its own negligence was, at most, passive in failing to take more precautions against such operation. In the absence of a contractual obligation by the operator of the hod hoist, assuming sole responsibility for the results of its own negligence, the question of ultimate liability as between the two defendants might be debatable. (Cf. *Wanamaker* v. *Otis Elevator Co.*, 228 N. Y. 192; *Scott* v. *Curtis*, 195 N. Y. 424; *Village of Port Jervis* v. *First Nat. Bank*, 96 N. Y. 550.) Here the contractor did by express agreement assume such responsibility.

" The contractor's contractual obligation was obviously intended to relieve the owner from liability for injury suffered by any person ' in the course of the performance ' of work by the contractor. The owner was not exposed to such liability in the first instance, unless failure, on its part, in some duty owed to the injured party contributed to the injury. A construction of the contractor's obligation which would exclude from its scope all injuries in which the contractor failed in some duty owed would entirely defeat the purpose of the obligation and render the obligation illusory. It is irrelevant that the owner obtained further protection from a policy insuring it against damages resulting from its own negligence. It might choose to do so if not satisfied that it was sufficiently protected by the agreements made by its contractors. Those agreements may not provide indemnity in all cases. Enough that the contractor's obligation plainly covers injuries caused by the contractor's negligence in which the owner did not participate, and where the owner's negligence, if any, was only passive and in the performance of a duty owed not to the contractor but to the injured party. We do not now decide whether it might extend further."

It would appear that the clear intent of the agreement for the use of this hoist was to make the Manhattan Company liable under all circumstances for any loss or damage sustained by any person while the hoist was being used and operated by it. The Manhattan Company entered into the agreement, the accident occurred while the hoist was in its charge and being operated by it, and the Boland Company sustained the loss indicated by the $8,000 verdict of the jury.

Such an agreement is not unusual nor against public policy. (*Westinghouse, Church, Kerr & Co.* v. *Long Island R. R. Co.*, 160 App. Div. 200.)

In *Long Island R. R. Co.* v. *American Bridge Co.* (175 App. Div. 170) the plaintiff sued the defendant, a contractor, upon an indemnity agreement. An employee of a subcontractor sued the railroad

company, alleging that its negligence in operating a train was the sole cause of his injury, and recovered a substantial judgment, which the railroad company paid. The question submitted to the Appellate Division, as set forth in the opinion of the court, was " Did the bridge company, by its contract with the railroad company assume absolute responsibility for all accidents, even those caused solely by the negligence of the railroad company, itself? " The court answered this question in the affirmative and its judgment was unanimously affirmed by the Court of Appeals (225 N. Y. 692).

Another case involving the construction of an indemnity agreement is that of *Post & McCord, Inc.*, v. *N. Y. Municipal R. Corp.* (187 App. Div. 167; affd., 230 N. Y. 540). There the court held that the railroad company had a right, as a condition of consenting that the work be done in a certain manner, to execute an agreement to protect it against any accident incident to such work, even though contributed to or caused solely by negligence of its own employees, and pointed out that in *Long Island R. R. Co.* v. *American Bridge Co.* (*supra*) the court placed a broad construction on the indemnity agreement, and held that it was intended to indemnify the plaintiff against any liability arising out of the performance of the work and that it was not necessary that there should be an express agreement to indemnify against the negligence of the party to whom the agreement runs.

Under the decisions it is clear that the Boland Company had a right to exact as a condition for the use of this hoist an agreement on the part of the Manhattan Company to protect it against any damage to person or property incident to the use of such hoist, even though some act of the Boland Company may have contributed to the accident.

C. P. Boland Co., Inc., is entitled to judgment against Manhattan Fireproofing Co., Inc., for the full amount recovered against it by the plaintiff in this action.

Submit order on notice.