145 So.2d 711

### UNITED STATES FIDELITY AND GUARANTY COMPANY

v.

### MASON AND DULION COMPANY, Inc.

6 Div. 417.

Supreme Court of Alabama.

July 26, 1962.

Rehearing Denied Oct. 25, 1962.

Ralph B. Tate, S. R. Starnes and Spain, Gillon & Young, Birmingham, for appellant.

**204**

Jas. E. Clark and London, Yancey, Clark & Allen, Birmingham, for appellee.

COLEMAN, Justice.

This is an appeal by complainant from a declaratory decree.

The appellant is the liability insurer of a contractor, Daniel Construction Company, Inc., which will be herein sometimes referred to as Daniel, or as the contractor or indemnitee. Appellant, by subrogation, stands in the shoes of Daniel, and appellant has all the rights Daniel had, but no more, so far as this case is concerned.

Daniel, the contractor, was building a plant for American Brake Shoe Company, the owner. Daniel made a subcontract whereby appellee undertook to do a part of the work. Appellee will sometimes be referred to as subcontractor or indemnitor.

The agreement between contractor and subcontractor contains the following provision:

"7. *Indemnity Agreement:* The Subcontractor covenants to indemnify and save harmless and exonerate the Contractor and the Owner of and from all liability, claims and demands for personal injury and property damage arising out of the work undertaken by the Subcontractor, its employees, agents, its subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor."

It is alleged in the bill and admitted in the answer that Dallas J. Faulkner was an employee of the subcontractor, that Faulkner fell from a scaffold and was injured on the job while working for the subcontractor, that Faulkner filed an action against the contractor charging that Faulkner was injured through the negligence of the contractor, that Faulkner recovered judgment against the contractor, that appellant has paid the judgment and is entitled, as subrogee of Daniel, to all the rights of Daniel. Appellant claims a right to be reimbursed by the subcontractor because, appellant contends, the Indemnity Agreement quoted above requires the subcontractor to indemnify the contractor for contractor's liability for the injury to Faulkner.

The record is bare of further facts to show the circumstances of the injury. The parties appear to concede, however, that Faulkner's injury did arise out of the work and was the result of the negligence of the contractor, and that the subcontractor was not negligent. We will so consider the case.

The decree appealed from declared that appellant is subrogated to the rights of Daniel, but that the subcontractor did not agree to indemnify Daniel for loss occasioned by Daniel's negligence, and that appellant is not entitled to recover from appellee the amount paid to Faulkner.

Appellant says that the contractor is entitled to indemnity because the contract provides for indemnity, although the liability of contractor resulted from the negligence of the contractor, the indemnitee.

Appellee says the contractor is not entitled to indemnity for two reasons. First, appellee says the Indemnity Agreement does not contain language sufficient to entitle indemnitee to indemnity for a loss occasioned by its own negligence. Second, appellee says that the contract has other

provisions besides the Indemnity Agreement quoted above and that when the entire contract is considered, the contractor is not entitled to be indemnified for a loss which resulted from contractor's own negligence.

Appellant contends that Eureka Coal Co. v. Louisville & N. R. Co., 219 Ala. 286, 122 So. 169, holds that the Indemnity Agreement in the instant case entitles the contractor to indemnity for its own negligence. We do not think that Eureka is decisive of the instant case. There the indemnitor was guilty of primary negligence causing the injury. Here the only causative negligence appears to be that of the indemnitee. We are of opinion that Eureka does not require us to hold that Daniel is entitled to be indemnified for its own negligence.

Appellant insists further, however, that the plain language of the agreement entitles the contractor to indemnity, and cites many cases from other states in support of the contractor's right to indemnity. Among them are: Payne v. National Transit Co., 3 Cir., 300 F. 411; National Transit Co. v. Davis, 3 Cir., 6 F.2d 729; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; Baltimore & O. R. Co. v. Youngstown Boiler & Tank Co., 6 Cir., 64 F.2d 638; Cavanaugh v. C. P. Boland Co., 149 Misc. 576, 268 N.Y. S. 390; Southern Pac. Co. v. Fellows, 22 Cal.App.2d 87, 71 P.2d 75; Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co., D.C., 23 F.Supp. 403; Northern Pac. Ry. Co. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226; Smoke v. Turner Const. Co., D.C., 54 F.Supp. 369; Griffiths v. Henry Broderick, Inc., 27 Wash.2d 901, 182 P.2d 18; Buffa v. General Motors Corp., D.C., 131 F.Supp. 478; James Stewart & Co. v. Mobley, Tex. Civ.App., 282 S.W.2d 290; Turner Const. Co. v. Belmont Iron Works, D.C., 158 F. Supp. 309. Appellee, on the other hand, relies heavily on Batson-Cook Company v. Industrial Steel Erectors, 5 Cir., 257 F. 2d 410, where the court held that the indemnity agreement did not require indemnitor to indemnify the indemnitee for a loss occasioned by indemnitee's negligence. Batson-Cook probably represents the weight of authority but, appellee says that the instant case " * * * is a case of first impression in the appellate courts of Alabama." In that situation our duty is to ascertain and apply the law of this state.

The so-called majority rule of strict construction appears to be that the parties are presumed to intend that the indemnitee shall not be indemnified for a loss caused by his own negligence unless the language of the contract affirmatively expresses an intent to indemnify for such loss. See Batson-Cook Company v. Industrial Steel Erectors, supra; and Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15. Reference to 175 A.L.R. 8, 143 A.L.R. 312, and related annotations will disclose cases in point. One annotator has said:

"Where a subcontractor expressly agrees to indemnify the general contractor, he will be bound by the clear terms of his undertaking. No question of interpreting the agreement arises where the terms of the contract are considered by the courts to be clear and unequivocal. (Citations omitted.)" [143 A.L.R. 315]

This court has said:

" * * * when the language is plain and unambiguous there is no room for interpretation, as it is not the province of the courts to make contracts for the parties. * * *" Williams v. Johns-Carroll Lumber Co., 238 Ala. 536, 539, 192 So. 278, 280.

We do not decide that the contractor is not entitled to recover for that the contract fails to contain

" * * * the talismanic words 'even though caused, occasioned or contributed to by the negligence, sole or concurrent' of the Indemnitee, or like expressions, * * *." Batson-Cook

Company v. Industrial Steel Erectors, supra, at page 412 of 257 F.2d.

We do decide that the contract is ambiguous and must be construed against the contractor who wrote it. So construed, the contract does not disclose a right in the contractor to recover for a loss occasioned by contractor's negligence.

The contract contains provisions other than and in addition to the Indemnity Agreement quoted above. This court has said:

"* * *⌐ where contracts contain extraneous references of fact and to other documents, the same enters therein to the extent that it is pertinent, and the parties are bound thereby. And he who omits to inform himself as to such fact or contents and extent of such other writing referred to, in so far as it is reasonable and in contemplation of parties to contract, is bound thereby. (Citations omitted.)" Ben Cheeseman Realty Co. v. Thompson, 216 Ala. 9, 12, 112 So. 151, 153.

Appellant relies on the rule that an indemnity contract when ambiguous is to be resolved in favor of the party intended to be indemnified, and in support of the rule cites Eureka Coal Co. v. Louisville & N. R. Co., 219 Ala. 286, 122 So. 169, and Louisville & N. R. Co. v. Cullman Warehouse, 226 Ala. 493, 147 So. 421. The cited cases do state the rule as contended for by appellant. Both cases cite as authority Alabama Fidelity & Casualty Co. v. Alabama Penny Sav. Bank, 200 Ala. 337, 76 So. 103, where this court said:

"Independent of any possible effect of the statutes the rule is that in the interpretation or construction of contracts of this character all fair doubts are to be resolved in favor of the party indemnified, just as is the practice in interpreting or construing contracts of insurance. Bank [of Tarboro] v. Fidelity [and Deposit] Co., 126 N.C. 320, 35 S.E. 588, 83 Am.St.Rep. 682, 690,

691; Amer. Surety Co. v. Pauly, 170 U.S. 133, 144, 18 Sup.Ct. 552, 42 L.Ed. 977." [200 Ala. 337, 341, 342, 76 So. 103, 107]

In Bank v. Fidelity Co., supra, the court quoted from American Surety Co. v. Pauly, supra, as follows:

"* * * In the latter case, Justice Harlan, speaking for a unanimous court, says on page 144: 'If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers, or agents of the surety company. This is a well-established rule in the law of insurance: National Bank v. Insurance Co., 95 U.S. 673 [24 L.Ed. 563]; Western Ins. Co. v. Croper, 32 Pa.St. 351, 355, 75 Am.Dec. 561; Reynolds v. Commerce etc. Ins. Co., 47 N.Y. 597, 604; Travellers' Ins. Co. v. McConkey, 127 U.S. 661, 666, 8 Sup.Ct.Rep. 1360 [32 L.Ed. 308]; Fowkes v. Manchester etc. Assn., 3 Best & S. 917, 925. As said by Lord St. Leonards, in Anderson v. Fitzgerald, 4 H.L.Cas. 484, 507: "It [a life policy] is, of course, prepared by the company, and if, therefore, there should be any ambiguity in it, must be taken, according to law, most strongly against the person who prepared it." There is no sound reason why this rule should not be applied in the present case. * * *' * * *" [83 Am. St.Rep. at page 691]

Thus it appears that one sound reason for the rule contended for by appellant is the general rule that an ambiguous contract is to be construed against the party whose language is construed. If the reason for the rule, that ambiguities in contracts of indemnity are construed against

the indemnitor, does not exist in the case at bar, then the rule resting on that reason does not apply.

The instant contract is primarily one for accomplishing the work undertaken by the subcontractor. The contract is not one whose principal objective is indemnity. The indemnity provision is incidental to the principal objective. We are of opinion that the instant contract, if ambiguous, must be construed against the party whose language the contract is.

The record leads us to conclude that the contract, or subcontract, entered into by contractor and subcontractor was prepared by the contractor, the indemnitee, in whose shoes the appellant now stands. Respondent's Exhibit "A" purports to set out the "Uniform Subcontract," which contains the "Indemnity Agreement" copied hereinabove and on which appellant bases its claim for indemnity. Exhibit "A" commences with Purchase Order No. M 2315 which appears to have been issued by and on behalf of Daniel, the contractor. The Purchase Order recites in pertinent part as follows:

"Terms: *Please sign and return carbon copy of attached Uniform Subcontract, as well as the carbon copy of the attached sheet covering insurance requirements, which are part of this purchase order.*"

We conclude that the language of the instant contract is the language of the contractor, and, if ambiguous, is to be construed against the contractor.

The "Uniform Subcontract" executed by contractor and subcontractor recites in pertinent part as follows:

"Section 4. The Contractor and the Subcontractor agree that all the terms and conditions shall apply to this agreement as are set forth in Section 5 of the Standard Form of Subcontract, Fifth Edition, of the American Institute of Architects. Where the General Conditions of the contract actually executed are not according to the Standard Form of the American Institute of Architects, Fifth Edition, the reference made by number in said Section 5 to certain articles in the General Conditions do not necessarily apply to the articles or sections designated by said numbers, but do apply to those articles or sections of the General Conditions of the contract actually executed which deal with particular provisions involved, and references in said Section 5 to the agreement refer to the general contract actually executed between the contractor and owner."

Respondent's Exhibit "B" purports to be:

" 'THE STANDARD FORM
OF SUBCONTRACT
"FOR USE IN CONNECTION WITH THE SIXTH EDITION OF THE STANDARD FORM OF AGREEMENT AND GENERAL CONDITIONS OF THE CONTRACT. * * *' "

The record indicates that, because the Fifth Edition was not available, the parties stipulated that the Sixth Edition would be used in lieu of the Fifth Edition, subject to correction of any discrepancies that might appear. The record does not indicate that any discrepancies were found and we take it that the Exhibits, which are the Sixth Edition, are to be regarded as correctly setting out the contents of the Fifth Edition.

Section 5 of the Standard Form of Subcontract recites in pertinent part as follows:

"Section 5. The Contractor and Subcontractor agree to be bound by the terms of the Agreement, the General Conditions, Drawings and Specifications as far as applicable to this subcontract, and also by the following provisions:

"The Subcontractor agrees—

"(a) To be bound to the Contractor by the terms of the Agreement, Gener-

al Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.

\* \* \* \* \* \*

"The Contractor agrees—

"(d) To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof affording remedies and redress to the Contractor from the owner."

Respondent's Exhibit "C" purports to be:

"THE GENERAL CONDITIONS OF THE CONTRACT FOR THE CONSTRUCTION OF BUILDINGS

"STANDARD FORM OF THE AMERICAN INSTITUTE OF ARCHITECTS.

"THE STANDARD FORM OF GENERAL CONDITIONS, SIXTH EDITION, HAS RECEIVED THE APPROVAL OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA; THE CONTRACTING PLASTERERS' INTERNATIONAL ASSOCIATION; THE NATIONAL BUILDING GRANITE QUARRIES ASSOCIATION, INC.; THE NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION; THE PAINTING AND DECORATING CONTRACTORS OF AMERICA, AND THE PRODUCERS' COUNCIL, INC."

Appellant insists that Exhibit "C" was not properly in evidence and is not to be considered. We do not agree. Appellant admits that the parties executed Exhibit "A," the Uniform Subcontract. Section 4 of Exhibit "A" states that the conditions apply to this agreement as are set forth in Section 5 of the Standard Form of Subcontract, which is Exhibit "B," except that where

the General Conditions of the contract actually executed are not according to the Standard Form, the reference made by number in said Section 5 do not necessarily apply to the articles or sections designated by said numbers. Section 5 of the Standard Form, Exhibit "B," recites that the parties agree to be bound, among other things, by the "General Conditions \* \* \* as far as applicable to this subcontract \* \* \*." We think that refers to Exhibit "C," which is "The General Conditions" of the Standard Form, or so we understand it.

Here appears ambiguity. Article 31 of the General Conditions, Exhibit "C," recites in pertinent part:

"Art. 31. Damages.—If either party to this Contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage, provided, the Owner shall be responsible for and at his option insure against loss of use of any of his existing property, due to fire or otherwise, however caused."

If the Indemnity Agreement is to be given the meaning which appellant says it must have, and the entire contract is to have that effect, then the subcontractor must reimburse the contractor for a loss caused by the negligence of the contractor.

On the other hand, if Article 31 of the General Conditions governs the entire contract, the contractor must indemnify the subcontractor for damage suffered "in any manner because of any wrongful act or neglect of the" contractor.

Under one provision, the contractor would be indemnified by the subcontractor for loss occasioned by the contractor's negligence. Under the other provision, the subcontractor would be indemnified by the contractor for loss occasioned by the contractor's negligence. It is difficult to see how both provisions can stand. One of them must fall, and that one is the one favorable

to the contractor who prepared the agreement.

Appellant argues further that:

"There is another significant factor in this case strongly evidencing the intent of the parties to have the involved indemnity provision cover the negligence of Daniel.

"By the terms of the sub-contract, the Appellee agreed to be bound to Daniel by the terms of the prime contract and to assume toward Daniel all the obligations and responsibilities that Daniel, by the prime contract, assumed toward the Owner. In the prime contract there appears the following indemnity provision (R.71):

" 'It is understood and agreed that you will reimburse American Brake Shoe for, and hold it harmless against, any and all claims for damages on account of injury to any person, persons, or property (including costs of litigation and attorneys' fees), which may arise by reason of your acts, your agents (whether or not such agents be designated as 'independent contractor') or employees during the course of work covered by this agreement.' "As pointed out above, this indemnity provision, by virtue of the terms came (sic) a part of the sub-contract. (The name of Daniel would be substituted for American Brake Shoe.)

"But the parties considered that this agreement was not sufficient and inserted the indemnity provision which is involved in this suit. Clearly, the indemnity agreement involved is much broader in scope and language than the indemnity provision in the prime contract which is set out above. Certainly, if the parties intended the agreement to cover only the negligent acts of the Appellee, there would have been no necessity in formulating this new indemnity provision which was added in the subcontract. The indemnity provision in the prime contract, which would have been applicable between Daniel and the Appellee, would have amply protected Daniel against the negligence of the Appellee. But the parties went further. Appellee and Daniel adopted this new indemnity provision which exonerated Daniel 'of and from all liability, claims and demands for personal injury and property damage arising out of the work undertaken by the sub-contractor, its employees, agents, its sub-contractors, and arising out of any other operation, *no matter by whom performed,* for and on behalf of the sub-contractor'. (Emphasis supplied)."

We do not agree with appellant's conclusion as to the purpose of the Indemnity Agreement. The effect of Section 5 of the Standard Form of Subcontract, Exhibit "B," quoted above, is to place the subcontractor in the same relation to the contractor, which the contractor occupied in relation to the owner. Admittedly the relation of contractor to owner required the contractor to reimburse the owner for loss occasioned by the contractor's negligence, but did not require the contractor to reimburse the owner for loss occasioned by the owner's negligence. So, the subcontractor is required to reimburse the contractor for loss occasioned by the subcontractor's negligence, but the subcontractor is not required to reimburse the contractor for loss occasioned by the contractor's negligence.

Considered in its entirety, the contract between contractor and subcontractor, as to the point here in question, is not specific or precise. It does not clearly indicate to us just what the parties did intend with respect to indemnity for a loss caused by the contractor's negligence. We are of opinion that the contract can be fairly and reasonably construed to support the contentions of appellee equally as well as it can be construed to support the contentions of appellant. The contract is one which illustrates the soundness of the rule which requires an ambiguous contract to be construed against the party who prepared it. The party prepar-

ing the contract had opportunity to choose appropriate language to protect his interest and we must presume that he did so to the fullest extent he deemed necessary. The instant contract was prepared by the contractor and, as to the ambiguity now at hand, is to be construed against the contractor.

The decree appealed from is in accord with this result and is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.