MILLER AND COMPANY OF BIRMING-HAM, Inc., Appellant,

v.

LOUISVILLE AND NASHVILLE RAIL-ROAD COMPANY, Appellee.

No. 20355.

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1964.

James E. Clark, Birmingham, Ala., London, Yancey, Clark & Allen, Birmingham, Ala., of counsel, for appellant.

Henry E. Simpson, Birmingham, Ala., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel, for appellee.

Before RIVES and WISDOM,* Circuit Judges.

RIVES, Circuit Judge.

In a declaratory judgment action, the district court construed the indemnity provisions of a spur-track agreement between the railroad and the industry [1] in favor of the railroad. The case was tried on stipulated facts. Paragraphs (12) and (14) of the contract between the railroad (first party) and the industry (second party) read as follows:

"(12) Second party agrees that it will not construct any overhead structure lower than 22 feet above the top of the rail of said track, or any structure within eight feet from center line of said track, and that it will not place or permit any structures or obstructions, of either a permanent or temporary nature, on said track, or within the limits of the horizontal and vertical clearances above provided; and further agrees that it will indemnify and save harmless the first party against and from any and all claims for loss of or damage to property or injury to person caused directly or indirectly by the existence, location or condition of any structures or obstructions of any kind on the premises of second party, or by any structures or obstructions, of either a permanent or temporary nature, on said track, or within the limits of the clearances above provided. Knowledge of or notice to the first party of the existence, location or condition of any structures or obstructions of any kind on the premises of the second party, and its continued operation of the track thereafter, shall not be a waiver of this covenant.

"(14) The second party also agrees to indemnify and hold harmless first party against loss, damage, or injury from any act or omission of second party, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track; and if any claim or liability shall arise from the joint or concurring act or omission of both parties hereto, their employees or agents, each party shall assume all liability for and indemnify the other party against loss, damage or injury to its own employees and to its own property and the property of others in its care or custody, and liability for loss, damage or injury not herein provided for shall be borne by the parties equally. Provided, that nothing in this section contained is intended to or shall relieve second party of the obligations of release and indemnity contained in Sections 11 and 12."

The contract was drawn by the railroad, and executed by both the railroad and the industry. The railroad built the spur track in consideration, among other things, of the industry executing the contract.

An employee of the industry filed suit against the railroad charging that it negligently operated railroad cars at the premises of the industry so as to cause them to collide with a lumber rack and force it into a wooden shed which collapsed on and injured the employee. The wooden shed was six feet, at its closest point, from the center line of the spur track. The shed was constructed by the industry more than two years prior to the accident, and the railroad had knowledge of its location and of its proximity to the spur track. The lumber rack was on the premises of the industry, and had been placed in the immediate vicinity of the spur track by employees of the industry other than the injured employee. The outermost portion of the railroad car alleged in the employee's complaint to

---

* The third Judge constituting the Court became ill before argument was heard, and the case is decided by a quorum. 28 U.S. C.A. § 46(c).

1. The parties will be so called.

have come into contact with the lumber rack was four feet and eight inches from the center of the spur track.

The railroad, upon being sued, made demand upon the industry to defend the action and to pay any loss which might be sustained by the railroad. The industry declined, and the railroad then filed this declaratory judgment action praying that the court declare whether, under the provisions of the contract, the industry is obligated to defend the action and to hold the railroad harmless. By its answer the industry joined with the railroad in seeking an adjudication of the controversy. The district court said in its conclusions of law:

"* * * Absent conduct on its part, as for example, its sole negligence producing the injury to Jackson, Batson-Cook Co. v. Industrial Steel Erectors, 5 Cir., 257 F.2d 410, which is not the case here presented, plaintiff is entitled to indemnity under paragraph 12 of the contract, Weyerhaeuser S. S. Co. v. Nacirema [Operating] Co., 355 U.S. 563 [78 S.Ct. 438, 2 L.Ed.2d 491], limited only by the modifying provisions of paragraph 14 respecting employees of the parties.

"Under the first clause of paragraph 14, the defendant has agreed to indemnify the plaintiff from the former's act or omission resulting in injury to the employees of either; and in view of the clause immediately following, defendant would not be bound to indemnify plaintiff under the first clause for an act or omission of the plaintiff not joint or concurring with its own act or omission. A consistent reading requires that indemnity under the first clause be predicated upon a sole act or omission of the defendant producing injury, as distinguished from a sole act or omission of the plaintiff, or a joint or concurring act or omission of both. The facts stipulated establish the joint and concurring act or omission of both plaintiff and defendant, Dery v. Wyer, 2 Cir., 265

F.2d 804, 810, and the parties having expressly agreed that in such case each party will assume liability for injury to its own employees and indemnify the other party against such injury. The defendant is bound by its contract to assume liability for the injury to its employee, Will Jackson, and to indemnify plaintiff against such injury. There is no room for the application of any theory of primary and secondary or active and passive negligence, where, as here, the indemnity is contractual. Weyerhaeuser, supra; Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133]."

The district court adjudged that the industry is bound to defend the suit of its employee against the railroad and to hold the railroad harmless.

The industry's principal reliance is upon this Court's decision in Batson-Cook Co. v. Industrial Steel Erectors, 5 Cir.1958, 257 F.2d 410. In that case we stated the rule in Alabama to be that, "while it need not be done in any particular language or form, unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence." 257 F.2d at 412. No such clear intent was found in Batson-Cook because the contract did not contain "the talismanic words 'even though caused, occasioned or contributed to by the negligence, sole or concurrent' of the Indemnitee, or like expressions * * * [or] the equivalent clear intent in other language of the agreement." 257 F.2d at 412. The opinion continued that, "The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms." 257 F.2d at 413.

The industry devotes the major part of its lengthy brief to a vigorous defense of Batson-Cook against criticisms contained in Jacksonville Terminal Co. v. Railway Express Agency, Inc., 5 Cir.1962, 296 F.2d 256; Crescent Towing

& Salvage Co. v. Dixilyn Drilling Corp., 5 Cir.1962, 303 F.2d 237, reversed in Dixilyn Drilling Corp. v. Crescent Towing & Salvage Co., 1963, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78; Southern Natural Gas Co. v. Wilson, 5 Cir. 1962, 304 F.2d 253; and perhaps also in Republic Steel Corporation v. Payne, 1961, 272 Ala. 483, 132 So.2d 581, 585; U. S. F. & G. Co. v. Mason & Dulion, 1962, 274 Ala. 202, 145 So.2d 711, 713; and Deen v. Holderfield, 1963, 275 Ala. 360, 155 So.2d 314. We do not find it necessary to decide whether Batson-Cook is presently a sound holding under the law in Alabama, because we think that, even under the strict test announced in that case, this contract clearly reflects a purpose to indemnify the railroad against consequences contributed to by its own negligence.

The industry admits that it constructed the wooden shed six feet at its closest point from the center line of the spur track and the lumber rack in the immediate vicinity of the track, whereas it had agreed not to put any structure or obstruction, temporary or permanent, within eight feet from the center line of the track. The industry agreed to "indemnify and save harmless the first party (railroad) against and from any and all claims for loss of or damage to property or injury to person caused directly or indirectly by the existence, location or condition of any structures or obstructions of any kind on the premises of second party, or by any structures or obstructions, of either a permanent or temporary nature, on said track, or within the limits of the clearances above provided."

If there were any doubt that "any and all claims" as used in the 12th paragraph include claims contributed to by the negligence of the railroad, that doubt would be removed by the 14th paragraph, certainly insofar as injuries to employees are concerned. To repeat, the 14th paragraph provides, in part, that: " * * * if any claim or liability shall arise from the joint or concurring act or omission of both parties hereto, their employees or agents, each party shall assume all liability for and indemnify the other party against loss, damage or injury to its own employees and to its own property and the property of others in its care or custody, and liability for loss, damage or injury not herein provided for shall be borne by the parties equally. Provided, that nothing in this section contained is intended to or shall relieve second party of the obligations of release and indemnity contained in Sections 11 and 12."

The contention that the phrase "any claim or liability (arising) from the joint or concurring act or omission of both parties" does not unequivocally include negligent acts or omissions is unfounded. Admittedly, the phrase is broader, for it would include also intentional torts and breaches of contractual duties, such as the industry's breach of its promises in Paragraph 12. But to say that it does not include negligent acts would be to say that use of the word "negligence" is essential. Batson-Cook made no such holding, but expressly indicated otherwise—" * * * while it need not be done in any particular language * * " 257 F.2d at 412. The Supreme Court of Alabama speaking on the related subject of release of a grantor from liability caused by mining operations, was even more explicit:

"Apparently, the trial court took the position, as do appellees, that since the exculpatory provisions of the deed make no mention of 'negligence', it was not intended to exonerate Republic from liability for its negligence, particularly in view of the rule that such provisions should be strictly construed against exoneration. Although the word 'negligence' is not used, it seems to us it was clearly intended to release Republic from liability for its negligence. Otherwise, most of the exculpatory provisions, including the covenant not to sue, would be without meaning. It is difficult to see how such provisions could have been more comprehensively drafted to re-

lieve Republic from liability for damages, whatever might be the basis therefor, except, perhaps, by specifically using the word 'negligence.' But failure to use such word is not alone determinative of the intention of the parties. To say it was intended to relieve Republic only from liability for damages based on a nuisance (cf. Terrell v. Alabama Water Service Co., 245 Ala. 68, 70–71, 15 So.2d 727), would be to disregard the plain and unambiguous wording of those provisions exonerating Republic 'from *any* and *all* claims for damages and *all* liability by reason of damages either to persons or property which may *in any way* be caused or occasioned at any time,' and the covenant not to sue." Republic Steel Corporation v. Payne, 1961, 272 Ala. 483, 132 So.2d 581, 585, 586.

Moreover, the final proviso in Paragraph 14 is a clear recognition by the parties that the industry's obligation of indemnity contained in Paragraph 12 is broader than its promises in Paragraph 14, and covers other claims or liabilities as well. We conclude that the industry's indemnity embraced claims based on the railroad's negligence.[2]

It had seemed to us that if the contract to indemnify the railroad does not embrace claims based on the railroad's negligence it had no meaning. In a supplemental brief, appellant's able counsel sought to refute that view.[3] While the resourcefulness of counsel is admirable, their refutation appears to us strained and our view remains unchanged insofar as concerns any field of operation of the contract which would ordinarily be in the minds of the parties.

The industry did not plead as an affirmative defense that the indemnity agreement is an illegal contract, but it does urge that the public policy of the State does not permit a construction which would indemnify a common carrier for its own negligent conduct. As noted, however, in a valuable annotation in 175 A.L.R. at p. 102, " * * * the service

2. Accord: Eureka Coal Co. v. Louisville & Nashville R. Co., 1929, 219 Ala. 286, 122 So. 169; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir. 1950, 183 F.2d 902, 20 A.L.R.2d 695; Seaboldt v. Pennsylvania R. Co., 3 Cir. 1961, 290 F.2d 296, on second appeal, 1963, 317 F.2d 363, cert. denied under name Thompson Mahogany Co. v. Pennsylvania R. Co., 1963, 375 U.S. 907, 84 S.Ct. 199, 11 L.Ed.2d 146.

3. In substance, as follows:
"At the argument of this appeal, counsel for the appellant was requested to suggest to the Court a field of operation for the hold harmless agreement relied upon by the Railroad if the appellee is not to be indemnified thereunder for loss or liability arising out of its own negligent conduct. In this connection we submit that in Alabama under the authority of Mallory Steamship Company v. Druhan, 17 Ala.App. 365, 84 So. 874, [877] 'where both parties are at fault but the fault of the party from whom indemnity is claimed was the efficient cause of the injury,' indemnity is recoverable. See also City of Mobile v. George, 253 Ala. 591, 45 So.2d 778, to the effect that one held liable to an injured person because of his passive negligence has rights of indemnity over against another who was not sued by the injured party, but who was guilty of active negligence. * * *

"We further suggest that the sidetrack agreement could effectively provide indemnity to the Railroad for loss and expense incurred by it in the investigation and defense of an action arising out of some alleged wrong claimed to have been committed by it involving the tracks on the premises of the appellant industry, but where it is adjudicated that the Railroad is free of fault on account of its lack of negligence. * * *

" * * * We submit that the Louisville & Nashville Railroad Company in its use of the sidetrack on the premises of Miller & Company of Birmingham, Inc., could incur a liability under the F.E.L.A. to one of its own employees thereupon injured by reason of its unsafe condition, and despite the absence of active negligence on the part of the railroad in creating the danger. The appellee could look to the industry, however, for indemnity on account of its breach of this non-delegable duty. * * *"

afforded the shipper by such additional facilities for the special handling of his freight is not required of the railroad under its duties to the public as a carrier, so that it may attach such conditions as it sees fit in giving its consent to furnish the particular service, including a provision for exemption from liability for loss through its own negligence." Accord as to contract indemnifying railroad against injuries by operation of light and power line, Eureka Coal Co. v. Louisville & Nashville R. Co., 1929, 219 Ala. 286, 122 So. 169; see also, 6A Corbin on Contracts, § 1471, p. 589.

The stipulated facts do not connect the railroad's negligence with its duties as a common carrier, or even show that the railroad is a common carrier, though we take judicial notice that it is.[4] Here, however, the railroad was contracting for a service not required of it as a common carrier. See Chicago & N. W. Ry. Co. v. Davenport, 5 Cir., 1953, 205 F.2d 589, 594, 595.

It makes no difference that an Alabama statute [5] may impose a duty on the railroad to construct and maintain spur tracks to existing industries. The Alabama Public Service Commission has adopted no general rules to implement that statute, nor has it prohibited the kind of indemnity contract here agreed on. In Sunlight Carbon Co. v. St. Louis & S. F. R. Co., 8 Cir. 1926, 15 F.2d 802, 805, it was said: " * * * on principle we perceive no reason why a railroad company may not, when acting in its private capacity, relieve itself from an absolute liability imposed by statute as well as from liability resulting from negligence." The spur track in this case was constructed and maintained not under the mandate of this statute but pursuant to the agreement between the industry and the railroad.

In the main, we agree with the district court's construction of the indemnity agreement. We disagree, however, with its judgment that the industry is bound and obligated to defend the suit of its employee against the railroad. The industry has the option to take its chances and await the possible event of the liability of the railroad becoming fixed and ascertained. King v. Capitol Amusement Co., 1930, 222 Ala. 115, 130 So. 799. However, after notice and an opportunity to defend, any judgment against the railroad will be conclusive against the indemnitor industry, unless obtained by fraud or collusion.[6] Further, in the event of judgment against the railroad, the agreement to "hold harmless" includes the costs of defending the claim. See 19 Words and Phrases, Perm. ed., p. 570 and pocket supplement.

The judgment is therefore modified so as to eliminate the provision that the industry is bound and obligated to defend the suit of its employee against the railroad. As so modified, the judgment is affirmed. Costs of appeal are taxed against the appellant.

Modified and affirmed.

---

4. Section 242 of the Alabama Constitution of 1901 provides in part:
"All railroads and canals not constructed and used exclusively for private purposes, shall be public highways, and all railroad and canal companies shall be common carriers."

5. "§ 205. *Spur and sidetracks provided for.*—Every railroad is required to construct and maintain spur tracks and sidetracks to industries already established under such reasonable rules and orders as may be made by the commission." Title 48, § 205 of the 1940 Code of Alabama.

6. King v. Capitol Amusement Co., supra; 27 Am.Jur. Indemnity, §§ 34 and 35, p. 478; 42 C.J.S. Indemnity § 32a, pp. 613–615.