BLACK WARRIOR ELECTRIC MEM-
BERSHIP CORPORATION,
Appellant,

v.

MISSISSIPPI POWER COMPANY,
Appellee.

MISSISSIPPI POWER COMPANY,
Appellant,

v.

R. B. STOVALL CONSTRUCTION CO.
et al., Appellees.

No. 25979.

United States Court of Appeals
Fifth Circuit.

July 3, 1969.

Jack B. Porterfield, John W. Clark, Jr., Dunn, Porterfield, McDowell & Scholl, Birmingham, Ala., for Black Warrior Electric.

Harold Bowron, Jr., Martin, Balch, Bingham, Hawthorne & Williams, Birmingham, Ala., for Miss. Power Co.

James E. Clark, London, Yancey, Clark & Allen, Birmingham, Ala., William S. Lawson, Tupelo, Miss., for R. B. Stovall, and others.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

GODBOLD, Circuit Judge:

We again consider whether an indemnity provision in a contract requires the indemnitor to save harmless the indemnitee from the consequences of the indemnitee's negligence. On April 9, 1965 Black Warrior Electric Membership Corporation (Black Warrior or indemnitee), an Alabama corporation, entered

into an agreement with Mississippi Power Company (Mississippi Power or indemnitor) permitting Mississippi Power to construct, operate and maintain poles, wires and appliances for the transmission of electric energy across Black Warrior's transmission lines and rights-of-way at twenty-two locations in three counties of the State of Alabama.[1] The agreement states no consideration given by Mississippi Power for the rights other than the agreements undertaken on its part, which the contract describes as covenants. One of these is an indemnity agreement which reads as follows:

> The Grantee shall and will at all times hereafter, indemnify, protect and save harmless Grantor from any and all claims, loss, damage, expense, and liability which Grantor may incur, suffer, sustain, or be subjected to, resulting from or in any way arising out of the construction, maintenance, or use of the wires, poles, and appliances of Grantee at such crossings.[2]

In December, 1965 Mississippi Power entered into a contract with R. B. Stovall Construction Company under which Stovall agreed to install approximately 51 miles of transmission line, which included wires and towers, from the Alabama-Mississippi state line to Mississippi Power's electric generating plant in Greene County, Alabama. A little more than a year after the Black Warrior-Mississippi Power agreement Walker, an employee of Stovall, brought suit against Black Warrior. He alleged that he was injured while working for Stovall on a job site [3] where he was a business invitee, when a crane which he was operating came in contact with an uninsulated high voltage wire of Black Warrior suspended from poles or towers and fifteen to twenty feet above the ground. In Count One he charged simple negligence; in Count Two, wanton injury.

Black Warrior, relying on the indemnity provision, filed a third-party action against Mississippi Power. Mississippi Power had entered into an indemnity agreement with Stovall and in reliance thereon, it filed a fourth-party complaint against Stovall. Mississippi Power moved for summary judgment against Black Warrior and Stovall. The trial court granted summary judgment in favor of Mississippi Power against Black Warrior, and overruled as moot the motion of Mississippi Power for summary judgment against Stovall. Black Warrior appeals, contending that summary judgment for Mississippi Power was improper. Though Black Warrior filed no motion for summary judgment it urges that this court direct entry of summary judgment in its favor.

Mississippi Power has appealed the overruling of its motion for summary judgment against Stovall. If Black Warrior's appeal is successful Mississippi Power may become liable, and wishes to preserve its opportunity to seek indemnity under its contract with Stovall.

1. The rights thus granted Mississippi Power to cross Black Warrior's lines and rights-of-way are described by the agreement simply as "rights" but also are variously referred to by the parties as a license and as an easement.

2. Mississippi Power also agreed to construct its transmission lines in accord with specifications attached to the agreement, to limit the current transmitted by it to a maximum of 230,000 volts, and to construct, operate and maintain its poles, wires and appliances in compliance with the National Electric Safety Code unless otherwise required by a regulatory body. If Black Warrior desires to change its lines or construct new ones, and the presence of Mississippi Power's lines causes additional cost, Mississippi Power agrees to pay the additional expense or rearrange or remove its facilities to eliminate the added cost.

3. The location of the job site was not described. The third party complaint alleges that the indemnity agreement covered the place referred to in Walker's complaint. Neither the record nor the briefs dispute the accuracy of this allegation, and we assume that the job site was at one of the described crossing locations.

Under *Erie* [4] we must examine Alabama law governing the contract between Mississippi Power and Black Warrior.[5] The Alabama contract law governing indemnification for the indemnitee's negligence was considered by this court in Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410 (5th Cir. 1958). We there held that:

> * * * unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence.

257 F.2d at 412.

The agreement in *Batson-Cook* contained a broad indemnity provision:

> Subcontractor assumes entire responsibility and liability for losses, expenses, demands and claims in connection with or arising out of any injury, or alleged injury (including death) to any person, or damage, or alleged damage, to property of Contractor or others sustained or alleged to have been *sustained in connection with or to have arisen out of or resulting from the performance of the work* * * * and agrees to indemnify and hold harmless Contractor, his agents, servants, and employees from

any and all such losses, expenses, damages and claims, * * *. *Id.* at 412 n. 4 (Original emphasis.)

Nevertheless this court held that an intent to impose the extraordinary liability of insuring against the indemnitee's negligence was not "spelled out in unmistakeable terms." 257 F.2d at 413.[6] Much blood has been shed on many battlefields about the holding and the approach of *Batson-Cook. See* Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F.2d 256, (5th Cir. 1961), cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962); Crescent Towing & Salvage Co., v. Dixilyn Drilling Corp., 303 F.2d 237 (5th Cir. 1962), rev'd, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963); Southern Natural Gas Co. v. Wilson, 304 F.2d 253 (5th Cir. 1962); American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 315 F.2d 856 (5th Cir. 1963) (see especially the concurring opinion); Miller and Co. of Birmingham v. Louisville & N.R.R., 328 F.2d 73 (5th Cir. 1964); United States v. Seckinger, 408 F.2d 146 (5th Cir. 1969).[7]

*Jacksonville Terminal* characterized *Batson-Cook* as inconsistent with the later Alabama case of Republic Steel Corp. v. Payne, 272 Ala. 483, 132 So.2d 581 (1961).[8] *Crescent Towing* applaud-

4. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5 The parties assumed, and the trial court ruled, that Alabama law is controlling, and on this appeal the parties make the same assumption. The agreement was dated April 9, 1965, and acknowledged the same date by the president of Black Warrior before a notary public in Alabama. On May 13, it was acknowledged by officers of Mississippi Power before a notary in Mississippi.

6. Although the court did not hold that the indemnity provision must contain the talismanic words "even though caused, occasioned, or contributed to by negligence, sole or concurrent, of the Indemnitee—or like expressions," its construction of the contract left little other option for the draftman of an indemnity agreement desiring to protect the indemnitee against his own negligence and seeking to find firm and certain ground between the too-

general language held to be ineffectual and the talismanic words held not to be required.

7. *See also* Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 320 F.2d 685 (1963).

8. 296 F.2d 256, 263, n. 5:
"It is significant, however, that in Republic Steel Corp. v. Payne [272 Ala. 483], 132 So.2d 581, 586, decided on June 29, 1961, the Supreme Court of Alabama took a position which appears to be inconsistent with the majority rule which was followed in Batson-Cook. In construing a covenant of release of liability of the grantors in sale of land, the Alabama Supreme Court held that a release "from *any* and *all* claims for damages and *all* liability" included a release from a claim based on the negligence of the grantor itself." (Original emphasis)

ed *Jacksonville Terminal* [9] and said that the strict rule appeared to be giving way to the modern practice of providing liability insurance and bargaining as to which party would bear the expense thereof, 303 F.2d at 244, a practice recognized again in American Agricultural Chemical, 315 F.2d at 860. In *Miller* this court referred to the repeated criticisms of *Batson-Cook* but did not find it necessary to decide whether it was still a sound holding under Alabama law, 328 F.2d at 76. In *Seckinger* the draftsman of the *Batson-Cook* opinion has recognized that it "may have been superseded" by *Republic Steel*, 408 F.2d at 151, n. 11. These characterizations and predictions now reach actuality. The post-*Batson-Cook* decisions of the Alabama Supreme Court require us to conclude that the specificity of language which *Batson-Cook* required no longer accords with Alabama law.

In *Republic Steel* the Alabama court held that an exculpatory clause in a deed was sufficient to protect the grantor against his own negligence.[10] Republic conveyed land by a deed containing elaborate provisions against assertion of claims by the grantees, and those holding under them, against the grantor, which was engaged in mining operations on land adjacent or near to that conveyed. The lessees of the grantees sued the grantor for injuries allegedly suffered as the result of inhaling fumes and gases emanating from grantor's mining operations. The provision in the Republic Steel contract was similar to the one in the Black Warrior-Mississippi Power contract. It did not specifically provide for exoneration of the grantor from his own negligence, but purported to relieve grantor "from any and all claims for damages and all liability by reason of damages either to persons or property which may in any way be caused or occasioned at any time. * * * " 132 So.2d at 583. The court stated:

Apparently, the trial court took the position, as do appellees, that since the exculpatory provisions of the deed make no mention of "negligence", it was not intended to exonerate Republic from liability for its negligence, particularly in view of the rule that such provisions should be strictly construed against exoneration. Although the word "negligence" is not used, it seems to us it was clearly intended to release Republic from liability for its negligence. Otherwise, most of the exculpatory provisions, including the covenant not to sue, would be without meaning. It is difficult to see how such provisions could have been more comprehensively drafted to relieve Republic from liability for damages, whatever might be the basis therefor, except, perhaps, by specifically using the word "negligence." But failure to use such word is not alone determinative of the intention of the parties. To say it was intended to relieve Republic only from liability for damages based on a nuisance (cf. Terrell v. Alabama Water Service Co., 245 Ala. 68, 70–71, 15 So.2d 727), would be to disregard the plain and unambiguous wording of those provisions exonerating Republic "from *any* and *all* claims for damages and *all* liability by reason of damages either to persons or property which may in *any way* be caused or occasioned at any time," and the covenant not to sue.

9. Chief Judge Brown points out in *Seckinger*, 408 F.2d at p. 150, n. 10, that *Jacksonville Terminal* may no longer reflect the law of Florida. This is a fray we need not enter in this case governed by Alabama law.

10. There is no substantial difference between an exculpatory clause and an indemnity provision insofar as interpretation of the provision to cover negligence of the grantor or indemnitee. *See* Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F.2d 256 (5th Cir. 1961), cert. denied, 369 U.S. 860, 82 S. Ct. 949, 8 L.Ed.2d 18 (1962) ; Ringling Brothers-Barnum & Bailey Combined Shows v. Olvera, 119 F.2d 584 (9th Cir. 1941). *Cf.* United States v. Croft Mullins Electric Co., 333 F.2d 772 (5th Cir. 1964).

132 So.2d at 585–586 (original emphasis).

Appellees urge that United States Fidelity & Guar. Co. v. Mason & Dulion Co., 274 Ala. 202, 145 So.2d 711 (1962), represents a retreat from *Republic Steel* and an adherence to the *Batson-Cook* rationale. We do not agree. True, the contract in *Mason & Dulion* contained a broad indemnity provision, and the court held that the contract did not provide for indemnity against the negligence of the prime contractor. But the court based its holding on the theory that the contract contained an additional provision inconsistent with the indemnity section, which caused the agreement to be ambiguous and required that it be construed against its author, the alleged indemnitee. The opinion does not refer to *Republic Steel*. The court specifically noted that the indemnity provision standing alone protected the contractor-indemnitee for loss occasioned by its own negligence. 145 So.2d at 716. Thus *Mason & Dulion* represents no departure from the teachings of *Republic Steel*.[11]

■ In addition, we read what the agreement says against the essential realities of the situation. "[T]he words employed are read in the setting of the parties." American Oil Co. v. Hart, 356 F.2d 657, 659 (5th Cir. 1966). "We reiterate that when called upon to construe a contract, this Court will consider its nature, facts and circumstances leading up to and attending its execution, relation and condition of parties, nature and situation of subject matter, and apparent purpose of making the contract." Pacific Insurance Co. v. Wilbanks, 214 So.2d 279, 283 (Ala.1968). *See also*

United States v. Seckinger, *supra* at 150. Both Black Warrior and Mississippi Power are public service corporations.[12] Mississippi Power needed the right to cross the rights-of-way of Black Warrior in Alabama with its own lines and poles. By contract it obtained the right to do so. This is different from a contractor's bringing onto a job site a subcontractor to do work which the contractor is obligated to perform. The effect of the agreement before us is that, for the purpose of meeting needs of Mississippi Power, Black Warrior allows to be performed on its premises work which absent the agreement would not otherwise take place, which in turn permits the entry to Black Warrior's rights-of-way, and the presence thereon, of a body of persons who otherwise would not be present. Neither the agreement, nor anything else in the record, discloses that Black Warrior received any economic benefit from the agreement. The recited consideration is the various agreements of Mississippi Power to protect Black Warrior from the consequences of what Mississippi Power is being permitted to do. Black Warrior, like other utilities engaged in transmitting high voltage electricity over transmission lines, incurs considerable risk of serious harm to people in the vicinity of its wires, poles and other equipment. Allowing construction work to be done on its premises, and the equipment thus installed to be operated and maintained by others, and permitting workmen to be brought on the premises, creates additional exposure. The consequences of the added exposure are dramatically portrayed by this case. The plaintiff, Walker, alleges that he was so severely

11. The more recent decision of the Alabama Supreme Court in Deen v. Holderfield, 275 Ala. 360, 155 So.2d 314, 12 A.L.R.3d 951 (1963) confirms the *Republic Steel* rationale for Alabama. *But see* Smith v. Kennedy, 43 Ala.App. 554, 195 So.2d 820 (1966), which Note, 19 Ala. L.Rev. 484 (1967) describes as erroneous.

12. Mississippi Power does not contend that it would be against public policy and therefore void for Black Warrior, a pub-

lic utility, to be indemnified against its own negligence by Mississippi Power. The agreement is not an effort by Black Warrior to attach conditions to its consent to render service to those it is obligated to serve. *See* Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527 (1943) ; Life & Cas. Ins. Co. v. Porterfield, 244 Ala. 557, 194 So. 173 (1940) ; McKinney v. Mobile & O.R.R., 215 Ala. 101, 109 So. 752, 48 A.L.R. 998 (1926).

shocked and burned that the necessary and useful parts of his arms and legs have been amputated and he is substantially a quadruple amputee. He claims $1,000,000 in damages. It is scarcely conceivable to us that Black Warrior expected, or that Mississippi Power intended, that the consequences of the increase in Black Warrior's exposure were to be borne by Black Warrior. To the contrary, the tenor of all of Mississippi Power's separate covenants is protection of Black Warrior from adverse consequences of allowing Mississippi Power to cross its rights-of-way.

The record shows no inequality of bargaining power between the two utilities.[13] There was no contractor-subcontractor relationship with the subcontractor in an inferior bargaining position.

■ We conclude that the Alabama courts would hold that the contract before us requires Mississippi Power to indemnify Black Warrior for the indemnitee's negligence. Black Warrior did not move for summary judgment below. However, Mississippi Power's motion for summary judgment alleges, as it necessarily must, that there are no material issues of fact, and all parties treat the issue of whether the agreement indemnifies Black Warrior for its own negligence to be before us as a question of law. Therefore, we remand with directions that summary judgment be entered for Black Warrior on that issue alone. International Longshoremen's Ass'n, A.F.L.–C.I.O. v. Seatrain Lines, Inc., 326 F.2d 916 (2d Cir. 1964); Moore, Federal Practice, ¶ 56.12, at 2244–46. Cf. King v. Realty Mortgage Co., 107 F.2d 90 (5th Cir. 1939). The district court has not reached, and depending on the progress of the litigation below may never reach, the question of whether the agreement is illegal or unenforceable to the extent that it would indemnify Black Warrior against its own wanton conduct. If this issue re-

quires decision it is initially for the district court.

Similarly it is for the district court to determine initially on a more complete record than is before us whether if plaintiff recovers against Black Warrior, and Black Warrior receives indemnity from Mississippi Power, Stovall is obligated in turn to pay Mississippi Power.

Reversed and remanded for proceedings not inconsistent with this opinion.

13. The factual background, including great variation in bargaining power, was relied upon in American Oil Co. v. Hart, 356 F.2d 657 (5th Cir. 1966).