**J. A. POLLOCK and Sharon M. Pollock, Plaintiffs-Appellants,**

v.

**BIRMINGHAM TRUST NATIONAL BANK, Defendant-Appellee.**

No. 80–7417.

United States Court of Appeals, Fifth Circuit. Unit B

July 17, 1981.

808

Edward Still, Birmingham, Ala., Joseph H. King, Jr., Atlanta, Ga., for plaintiffs-appellants.

Bradley, Arant, Rose & White, Laurence D. Vinson, Jr., Birmingham, Ala., for defendant-appellee.

Before TJOFLAT, HATCHETT and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

The Pollocks appeal from summary judgment granted in favor of the bank, Birmingham Trust National Bank ("BTNB" or "the Bank"). In their complaint the Pollocks alleged generally that BTNB was a "creditor" within the meaning of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and that it failed to make all the disclosures required by that Act, all in connection with the credit purchase of an automobile. The plaintiffs sought summary judgment, which was denied, and the lower court granted summary judgment for BTNB, which had not moved for summary judgment. Because the granting of summary judgment for the nonmoving party might have foreclosed plaintiffs' opportunity to dispute issues of fact material to a theory of liability that was not necessarily drawn into issue by the plaintiffs' own motion for summary judgment, we reverse.

■ The Act imposes liability on both nondisclosing "creditors" and their "subsequent assignees," although the scope of liability of the latter is considerably less than that of the former. *Cf.* 15 U.S.C. § 1640 *with* § 1614.[1] Although a party cannot ordinarily be both a creditor and a subsequent assignee, one can be a "creditor" within the meaning of Regulation Z in either of two ways, by "extending" consumer credit or by "arranging for the extension" of consumer credit. 12 C.F.R. § 226.2(s). *See also Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511 (5th Cir. 1976); *Cenance v. Bohn Ford, Inc.*, 621 F.2d 130 (5th Cir. 1980). *Meyers* added that whether a party is a creditor or a subsequent assignee does not turn upon what appears on the face of the papers, but depends instead on the substantive relationship between the ostensible creditor and assignee. If the original creditor is a mere arranger of credit, the appar-

1. "Subsequent assignees," a term that is not defined by the Act, are liable as original creditors for any violations of the Act in connection with the extension of credit, but only "where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary." 15 U.S.C. § 1614.

ent assignee may be the actual extender of credit, with the same responsibility and scope of liability under the Act as any other creditor. All this would turn on the facts of a given case, facts largely outside what is apparent on the face of a disclosure statement. In contrast, the liability of an assignee, if that is a party's true status under the Act, is, for the most part, determined by what is "apparent on the face of the instrument assigned." 15 U.S.C. § 1614.

Plaintiffs filed a motion for summary judgment after limited discovery, consisting of interrogatories, none of the answers to which established in any factual detail the ongoing business relationship between the Bank and the automobile dealer. Plaintiffs' summary judgment motion did not, on its face, recite whether it was based on the claim that there were no material issues of fact respecting BTNB's status as a "creditor" on the one hand, or as a "subsequent assignee" on the other. No memorandum in support of this motion accompanies the Record on Appeal. From the record and briefs it is apparent that BTNB filed with the lower court a memorandum in opposition to plaintiffs' summary judgment motion, but that memorandum also is not a part of the Record on Appeal. In that memorandum, we were told at oral argument, BTNB argued that it was not liable under either an "extender of credit" theory, as an original creditor, nor as a subsequent assignee. Concerning the latter theory of liability, BTNB argued both that it was a subsequent assignee, and therefore not an

original creditor, and that the nondisclosures giving rise to liability under the Act were not apparent on the face of the instrument assigned to it by the automobile dealership.

■ In response to the defendant's memorandum in opposition to the summary judgment motion, and before the district court reached its decision to grant summary judgment for the Bank, plaintiffs' counsel sent a letter to the district judge in which he stated that "we have not taken the position that BTNB is liable as an initial creditor, but that it is liable [as a subsequent assignee]." [2] The letter did not bother to specify that the "position taken" in the motion for summary judgment was on one of more than one distinct theories of liability comprehended by the general allegations of the complaint. With this concession in mind, the district judge reasonably understood the plaintiffs to be limiting their theory of prosecution against the Bank to one of assignee liability.[3] He thereupon addressed the claim of assignee liability, examined the instrument assigned, and concluded, as a matter of law, that BTNB was outside the scope of assignee liability.[4]

In a motion to reconsider, which also comes to us without any accompanying briefs that might have been filed in the lower court, the plaintiffs explained, without elaboration, that the letter merely referred to "the limited nature of the theory on which summary judgment was being sought," presumably the theory of assignee

2. Counsel's letter read in part:
 Dear Judge Hancock:
  This letter is a short response to Larry Vinson's memo.
  First, we have not taken the position that BTNB is liable as an initial creditor, but that it is liable under 15 USC § 1614 which provides that assignees are liable for violations apparent on the face of the instrument. Given the fact that BTNB's copy of the disclosure form is slightly different from the Pollock's form, they could not have had this awareness on the "unpaid balance of cash price" issue. Summary judgment on this point is due to be denied. . . .

3. The conclusion was all the more reasonable in light of the district judge's awareness that

the plaintiffs were also proceeding against the automobile dealer under a theory of original creditor liability. But as we have noted, there can be more than one creditor, and more than one kind of creditor, to a consumer credit transaction, and the fact that one is pursuing one party as a creditor does not, by that fact alone, prevent one from pursuing another party in the alternative, as either a creditor or an assignee.

4. In their brief on appeal, at 2, n. 1., appellants do not challenge the district court's conclusion that BTNB is not liable as an assignee, nor have they reserved the issue at oral argument. We therefore deem any claim of assignee liability to have been abandoned for good.

liability. R., 29. In his order denying reconsideration, the district judge clearly based his decision on the effect of the letter as an abandonment of any theory of original creditor liability.[5] There is no indication in the record of any further hearings, motions, or exchanges.

The parties have argued as if the central issue in this appeal is whether a district court has the power under the Federal Rules of Civil Procedure to grant summary judgment for a nonmoving party, but we do not think that question is involved. There is no question presented by this record of the power of a district court, in the proper circumstances, to grant summary judgment for a nonmoving party. The great weight of authority, and of our own authority by direct implication, supports the existence of such a power. *Moore's Federal Practice*, ¶ 56.12; Wright & Miller, *Federal Practice and Procedure*: Civil § 2716, at n. 7; and *Black Warrior Electric Membership Corp. v. Mississippi Power Co.*, 413 F.2d 1221 (5th Cir. 1969). But wherever the power has been admitted to exist, it has been attended with the most important qualification: Absent an otherwise effective abandonment, the party against whom judgment is rendered must not be foreclosed from litigating issues of fact material to any surviving claims. Prof. Moore makes explicit what is otherwise assumed whenever summary judgment is granted:

> Care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary

judgment is rendered is entitled thereto as a matter of law.

*Moore's Federal Practice*, ¶ 56.12, at 56–334.

What is at issue, therefore, is whether there was a live claim, adequately stated by the complaint, as to which there were unresolved issues of material fact at the time the district judge granted summary judgment for the Bank.[6] Plaintiffs argue that summary judgment was sought on a distinct theory of liability, that of assignee liability, reserving by implication the issue of the Bank's liability as an original creditor. The Bank argues that, by not explicitly reserving the issue of creditor liability, that claim, along with the claim of assignee liability, was necessarily submitted for judgment on the facts as they were then established. Both parties look to the letter in support of their position, although both sides find it necessary to add words to the letter in order to give it the full meaning argued for here. The Pollocks contend that what their lawyer meant to say was that "we have not taken the position [in our motion for summary judgment] that BTNB is liable as an initial creditor." The Bank argues instead that the meaning actually conveyed was that "we have not taken the position [in our motion for summary judgment, and we do not take the position in our complaint,] that BTNB is liable as an initial creditor."

What this appeal comes down to, then, is whether the district court correctly construed the ambiguous letter as an effective abandonment of the Pollocks' claim of original creditor liability against the Bank. If the letter is an effective abandonment of the original creditor claim, then the Pollocks' subsequent abandonment of the as-

---

5. The district judge acknowledged that "[t]he complaint could be viewed as seeking redress ... against BTNB as an extender of credit or as an assignee or both," but he concluded that by their counsel's letter plaintiffs had "elected to limit their claim against BTNB ...." R., at 31–32.

6. Appellants appear to argue that summary judgment was procedurally improper, inasmuch as the district court did not serve notice of its intention to treat the letter as an aban-

donment or to grant summary judgment as if the letter were an effective abandonment. But this argument begs the question of the effect of the letter as an "admission on file" under F.R. Civ.P. 56(c). That rule provides that summary judgment "shall be rendered forthwith" if, among other things, admissions on file show that there remains only a claim as to which there are no material issues of fact. *See* Wright & Miller, *Federal Practice and Procedure*: Civil § 2722, at nn. 33–39.

signee theory of liability leaves nothing for us but to affirm, because the complaint does not purport to state any other claim against the Bank. If the letter does not operate as an effective abandonment of the original creditor theory of liability then summary judgment for the Bank was error, not because summary judgment can never be granted in favor of a nonmoving party, but because there remained unresolved issues of fact concerning an alternative claim that had been adequately stated in the complaint and had neither been submitted for judgment nor abandoned.

■ On its face the letter is ambiguous, but considered in context it does not amount to an abandonment of the complaint's claim of creditor liability.[7] A single sentence in a short letter, equally susceptible to an interpretation that a claim is being abandoned as it is to an interpretation that it is not, cannot operate to terminate that claim over objection. There must be something more, either in the way of conduct or declared intentions, before we can ignore a party's own interpretation of the meaning intended.

Our conclusion is buttressed by circumstances suggesting the alternative character of plaintiffs' summary judgment motion. The only supporting evidence that plaintiffs submitted was a copy of what they believed to be the instrument assigned by the auto dealer to the Bank. This hardly suffices to make out a case, under *Meyers*, of a bank's original creditor liability in the typical auto sales contract assignment case. And discovery has yet to provide that evidence in this case. Assignee liability, on the other hand, would normally be determined on the basis of what the plaintiffs submitted, what they thought was assigned to the Bank and what was apparent on its face. The logical implication is that summary judgment was sought on the basis of the case easiest to prove, and that failing that the plaintiffs would then turn to the more difficult task of establishing the Bank's liability as a co-creditor of the auto dealer's. Considered in this light, the letter merely expresses plaintiffs' view that summary judgment was sought not as to their whole cause of action, but only as to one of its alternative theories. It does not suggest the abandonment of an issue that was nowhere near ripe for submission.

■ The Bank nonetheless argues that there are no issues of fact material to its liability as creditor. But the theory of downstream finance liability recognized by *Meyers* requires an evaluation of the part played by the automobile dealership, and there is simply no evidence in the record before us that in any way establishes the relationship of the dealership and the Bank here. All we have is the argument of counsel that the Bank's relationship was that of subsequent assignee, and we are sure that learned counsel understand that summary judgment must rest on something more.

Alternatively, the Bank argues that we might affirm on still another ground not reached below, that suit is barred under the Act's statute of limitations. It appears that there is some question as to when this credit transaction was entered into. We will not be the first court to weigh the evidence on this matter, leaving it instead for the district court to reach in due course.

REVERSED and REMANDED.

TJOFLAT, Circuit Judge, dissenting:

The facts in this case are not in dispute; in my view, the district judge was required

7. As we noted at the outset, the complaint simply alleged that the Bank was a creditor and was liable for violations of the Act. It did not distinguish by separate counts or otherwise between the Bank's liability as an original creditor or as an assignee. Some question might exist whether this ever adequately stated a claim of assignee liability under § 1614, and indeed this was the probable reason for the prefatory sentence in counsel's letter to the district court, as prior to that passage there is no explicit reference in the record before us, in either the complaint, plaintiff's response to a motion for more definite statement, or in the motion for summary judgment itself, of any theory of prosecution under § 1614. The complaint does cite § 1640, however, and there does not appear to be any question that, whatever other shortcomings in the complaint, it does give notice of a claim that the Bank is liable as an original creditor.

to bring the litigation to a close. A brief review of the record demonstrates the appropriateness of summary judgment.

On August 10, 1978, J. A. and Sharon M. Pollock purchased a new automobile from Village Chrysler-Plymouth Inc. (the Dealer), in Birmingham, Alabama. The Pollocks bought the car on credit; they gave the Dealer a note for most of the purchase price, and the Dealer assigned the note to Birmingham Trust National Bank (the Bank). On August 8, 1979, the Pollocks sued the Bank in district court, alleging that the Bank had violated the Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq. (1976), and Regulation Z, 12 C.F.R. 226, by failing to make the disclosures required by the Act and regulation to be made to a borrower in a consumer credit transaction. The Pollocks claimed $2,000 in damages and an attorney's fee.

On February 8, 1980, the Pollocks moved for summary judgment. Thereafter, their attorney advised the court by letter that the plaintiffs sought to hold the Bank liable not as an initial creditor, but, instead, as an assignee under 15 U.S.C. § 1614 (1976), which provides that assignees are liable for any Truth-in-Lending law violations apparent on the face of the credit instrument.[1] The Pollocks apparently took that position because they were simultaneously prosecuting a Truth-in-Lending action in the same court against the Dealer, alleging that the Dealer, not the Bank, was liable as the initial creditor for failing to make the required disclosures.

The district court denied the plaintiffs' motion for summary judgment and entered summary judgment for the Bank, though it had not formally moved for such relief. Treating the Bank as an assignee, the court found no Truth-in-Lending Act violations apparent on the face of the credit instruments assigned to the Bank and therefore held, as it was required to do, that the Bank was not amenable to liability under section 1614. Plaintiffs' motion for reconsideration was denied, and plaintiffs took this appeal, contending that the district court lacked authority to grant the Bank summary judgment on their motion.

While this court has not been called upon to decide the precise question—whether a non-moving party can be granted summary judgment on his adversary's motion—the prevailing, and, to me, most reasonable, view is that a district court has the implied authority under both Fed.R.Civ.P. 54 and 56 to grant that relief. According to Professor Moore:

> If either the proponent of the claim or the defending party moves for a summary judgment, and the court finds that the moving party is not entitled thereto, but that the other party is so entitled, it would seem that the court has the power to enter the proper judgment, although a cross-motion therefor was not made. Rule 54(c) gives the court the power to enter the final judgment to which the prevailing party is entitled, even if the party has not demanded such relief in his pleadings, except in default judgment cases. The theory is that the form of the pleadings should not place a limitation upon the power of the court to do justice. So where one party has invoked the power of the court to render a summary judgment against his adversary, it is reasonable that this invocation gives the court power to render a summary judgment for his adversary if it is clear that the case warrants that result.

6 *Moore's Federal Practice*, ¶ 56.12, at 56–331 (2d ed. 1976) (footnote omitted).

This position has been adopted by the Second and Third Circuits, *Missouri Pacific Railroad v. National Milling Co.*, 409 F.2d 882, 885 (3d Cir. 1969); *Local 33, International Hod Carriers Building and Common*

---

1. Section 1614 of Title 15 provides:

    Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary.

*Laborer's Union of America v. Masson Tenders District Counsel*, 291 F.2d 496, 505 (2d Cir. 1961), and, as the majority acknowledges, it is implicit in our holding in *Black Warrior Electric Membership Corp. v. Mississippi Power Co.*, 413 F.2d 1221, 1226 (5th Cir. 1969). There, we reversed the entry of summary judgment in favor of the moving party and ordered the district court, on remand, to enter summary judgment in favor of the non-moving adversary.[2]

The Pollocks contend that the district court somehow erred in considering their attorney's letter to the court, wherein he unequivocally announced that the Pollocks were suing the Bank as an assignee, rather than as an initial creditor. Rule 56(c) provides that summary judgment shall be entered if, among other documents, "[the] admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In assessing the record in this case, the district judge was fully authorized, if not duty bound, to consider the attorney's letter, which, after all, was addressed specifically to the question whether judgment was due. The letter was straightforward; it said:

> [The Pollocks] have not taken the position that [the Bank] is liable as an initial

creditor, but that it is liable under 15 U.S.C. § 1614 which provides that assignees are liable for violations apparent on the face of the instrument.

Confronted with this representation by an officer of the court, the district judge was entitled to assess the Bank's liability under section 1614 only, and to fashion the disposition he reached.

The Pollocks now concede, as they must, that the Bank cannot be held liable as an "assignee." The only way they can have another go at the Bank is to convince us that their attorney's letter, which to me is unambiguous, did not mean what it said. What their attorney somehow meant to say was that if he lost on his theory that the Bank was an "assignee," he wanted another day in court to claim that the Bank was an "extender of credit." I, for one, cannot countenance such disingenuousness.

I therefore dissent.

2. *Hanson v. Polk County Land, Inc.*, 608 F.2d 129 (5th Cir. 1979), cited by the Pollocks in support of their argument, is inapposite. In *Hanson*, defendants moved orally for summary judgment and the trial court granted the motion on the same day. A written motion was later filed with the court, and the court issued a written final judgment six days later. The sole question presented was whether the district court had the authority under Fed.R.Civ.P. 56 to grant summary judgment to a moving party, on oral motion, when the non-movants had not been given the ten days notice required by the rule. A panel of this court properly held that it was error to grant the movant's motion under these circumstances.