**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Marion BRANTLEY, Defendant,**

**Unisun Insurance Company, Intervenor.**

**Civ. A. No. 92–D–543–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 28, 1994.

Jeffrey W. Smith, Montgomery, AL, for plaintiff.

William Sidney Haynes, Jack B. Hinton, Jr., Montgomery, AL, for Unisun.

De MENT, District Judge.

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on Motion for Summary Judgment, together with brief and supporting materials, filed herein April 5, 1993, by Plaintiff Allstate Insurance Company ("Allstate"); and on Intervenor Unisun Insurance Company's ("Unisun") memorandum in opposition thereto, together with brief and supporting materials, filed May 5, 1993.

### I. BACKGROUND

On May 24, 1990, Marion Brantley and his wife Dorothy Brantley were involved in an automobile accident on Interstate 85 near Greenville, South Carolina. The accident occurred when Mr. Brantley, who was driving his wife's car, attempted to change lanes on the northbound side of the interstate. In doing so, Mr. Brantley, turned into the path of a Howard Lisk, Inc. tractor trailer rig which occupied the left hand lane. In an effort to avoid the car, the truck driver, Robert Jackson, turned sharply to the left but, in doing so, the truck crossed the median and entered the southbound side of the interstate where it struck another vehicle. The southbound vehicle was occupied by Lawrence Lewis and William Godfrey. The vehicle was owned by Carolina Woodworking, Inc., and both men were employed by the business at the time of the accident.

As a result of the crash, Mr. Godfrey sustained a collapsed lung, fractured ribs, a fractured left leg, a fractured left arm, facial bruises and lacerations. Mr. Lewis sustained a fractured left knee, head injuries, and facial lacerations. During that time, Mr. Lewis incurred medical expenses of $21,799.03. In addition, a worker's compensation lien was in effect for the sum of $58,573.43.

Mr. Godfrey incurred medical expenses of $26,511.69. He also accumulated $10,810.06 in lost wages.

On April 15, 1991, Mr. Godfrey filed suit against Mr. Brantley, Mr. Jackson, and Howard Lisk, Inc. in the Court of Common Pleas of Greenville County, South Carolina. On July 1, 1991, Mr. Lewis filed suit against Mr. Brantley and Howard Lisk, Inc. in the United States District Court for the District of South Carolina, Greenville Division.

The vehicle driven by Mr. Brantley at the time of the accident was in fact owned by Mrs. Brantley. Mrs. Brantley purchased the vehicle prior to her marriage to Mr. Brantley. An auto insurance policy was purchased by Mrs. Brantley from State Farm Insurance Company ("State Farm"), when she bought the vehicle. The vehicle was still insured by State Farm when the accident occurred. Mr. Brantley also owned an automobile that he had purchased prior to his marriage and, like his wife, he also obtained an auto insurance policy for the vehicle at the time the vehicle was bought. However, Mr. Brantley was insured by Allstate and his wife's vehicle was not listed on his Allstate policy.

Shortly after Godfrey and Lewis filed their respective suits, Allstate wrote Mr. Brantley a letter dated July 18, 1991, in which they denied coverage for the accident and declined to defend him in the lawsuits. Allstate based its decision to deny coverage on the following language contained in Mr. Brantley's policy:

Part I. Automobile Liability Insurance

Bodily Injury—Coverage AA

Property Damage—Coverage BB

Allstate will pay for all damages a person insured is legally obligated to pay—because of bodily injury or property damage meaning:

(1) Bodily injury, sickness, disease, or death to any person, including loss of services; and

(2) Damage to or destruction of property, including loss of use.

Under these coverages, your policy protects the person insured from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of the auto we insure.

\* \* \* \* \* \*

Part I. Continued . . .

Persons Insured

(1) While using your insured auto:

(a) You,

(b) any resident, and

(c) any other person using it with your permission.

(2) While using **a non-owned auto:**

(1) **you,**

(2) any resident relative using a four wheel private passenger or utility auto,

(3) Any other person or organization liable for the use of an insured auto if the auto is not owned or hired by the person or organization. [Emphasis supplied.]

\* \* \* \* \* \*

**INSURED AUTOS**

(1) Any auto described on the declarations page and the four wheel private passenger auto or utility auto you replace it with.

(2) An additional four wheel private passenger auto or utility auto you acquire during the premium period. This auto will be covered if we insure all other private passenger autos or utility autos you own. You must, however, notify us within 60 days of acquiring the auto and pay any additional premium.

(3) A substitute four wheel private passenger auto or utility auto, not owned by you or a resident, being temporarily used while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed.

(4) **An unowned auto used by you or a resident relative with the permission of the owner. *This auto must not be available or furnished for the regular use of a person insured.*** [Emphasis supplied.]

(5) A trailer, while attached to an insured auto designed for use with a private passenger auto or utility auto. This trailer can't be used for business purposes other than with a private passenger auto or utility auto.

Specifically, Allstate informed Mr. Brantley that his wife's vehicle was not covered under his own policy because the vehicle was "available or furnished for [his] regular use."

Following Allstate's denial of coverage, the parties involved in the underlying lawsuits entered into settlement negotiations. During those negotiations, State Farm (Mrs. Brantley's insurer) agreed to pay the limits of their liability on Mr. Brantley's behalf. Unisun, the insurance carrier for Carolina Woodworking and the intervenor in this case, agreed to provide Mr. Lewis and Mr. Godfrey with underinsured motorist benefits. In an agreement dated January 30, 1992, Unisun settled the balance of Mr. Lewis's claim against Mr. Brantley for the sum of $20,000.00. In a separate writing Mr. Brantley assigned his rights to recovery against Allstate to Unisun. On August 31, 1992, Unisun entered into an agreement with Mr. Godfrey to settle the balance of his claim against Mr. Brantley for the sum of $30,000.00. Again by a separate writing, Mr. Brantley assigned his rights to recovery against Allstate to Unisun.

On May 1, 1992, between the time of the Lewis settlement and the Godfrey settlement, Allstate filed this Declaratory Judgment action seeking a determination by this Court that they have no obligation to defend or indemnify Mr. Brantley for the accident. On June 2, 1992, Unisun sought to intervene in Allstate's declaratory judgment action and in fact filed a complaint against Allstate for subrogation following the settlement with Mr. Godfrey. Allstate, answered Unisun's complaint for subrogation stating first that Mr. Brantley's accident was not covered under their policy and second, that Unisun had failed to notify them of the settlement negotiations that were entered into by the parties and thus were not entitled to reimbursement for their payments to Godfrey and Lewis on Mr. Brantley's behalf.

At this time, Unisun and Allstate have agreed to submit this case to the court on stipulated facts, the deposition and affidavit testimony of Mr. and Mrs. Brantley, as well as exhibits thereto, and briefs.

## II. STANDARD FOR SUMMARY JUDGMENT

In considering a motion for summary judgment, this Court must refrain from deciding material factual issues but, rather, must decide whether such factual issues exist and, if not, whether the party moving for summary judgment is entitled to judgment as a matter of law. See *Dominick v. Dixie National Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987). Furthermore, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. See *Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir.1986). "Rule 56(c) mandates the entry of summary judgment * * * against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); accord *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir.1987). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party * * *. If the evidence is merely colorable * * * or is not significantly probative, summary judgment may be granted." *Anderson*, supra, 477 U.S. at 249–50, 106 S.Ct. at 2511; accord *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988).

Furthermore, the district court has the power to grant summary judgment for a nonmoving party. See *Pollack v. Birmingham Trust National Bank*, 650 F.2d 807 (5th Cir.1981); *Black Warrior Elec. Membership Corp. v. Mississippi Power Co.*, 413 F.2d 1221 (5th Cir.1969). However, the Court must take care "to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is ren-

dered is entitled thereto as a matter of law." *Pollack,* 650 F.2d at 810 (quoting MOORE'S FEDERAL PRACTICE paragraph 56.12).

### III. DISCUSSION

█ The first question raised in the motion for summary judgment is whether or not the accident Mr. Brantley caused while driving his wife's car is covered under his Allstate policy. In order to answer that question, this Court must determine whether or not Mrs. Brantley's car was "available or furnished for the regular use" of Mr. Brantley. In doing so, this Court is mindful of the Alabama Supreme Court's admonition that "exceptions to coverage in a policy of insurance must be interpreted as narrowly as possible in order to provide maximum coverage of the insured." *Hall v. State Farm Insurance Co.,* 514 So.2d 853, 856, 57 (Ala. 1987).

To begin with, it should be noted that the sole evidence presented to the Court which pertains to this question is the affidavit and deposition testimony of Mr. and Mrs. Brantley. While Allstate might have benefitted by offering the testimony of some neutral and disinterested party, it chose not to, and this Court must therefore decide this matter with the evidence before it. With this in mind, it appears to be clear that there is no genuine issue of material fact as to this question and that Unisun is entitled to summary judgment. The testimony contained in the Brantley's affidavits and depositions establish that Mrs. Brantley's vehicle was not available or furnished for the regular use of Mr. Brantley. The following passages contained in Mr. Brantley's deposition tend to support this finding:

"Q. Would you ever drive her car just on your own, by yourself?

A. No.

Q. You never did that, did you?

A. I don't think I did that."

    *   *   *   *   *   *

"Q. But as you recall it, though, the times that you drove your wife's car were only times when she was in the car with you and you were relieving her from driving; is that correct?

A. That's right. That's right."

    *   *   *   *   *   *

"Q. And when you were going to use your wife's car when ya'll were traveling together, would you ask her permission before you did that?

A. Yes.

Q. And that would be something you would do all the time, ask her permission?

A. All the time. Yes, that's right.

Q. You wouldn't just go out and take her car without asking permission, would you?

A. No sir.

Q. You felt like that was a necessary thing to do, did you not?

A. That's right. That's right."

    *   *   *   *   *   *

"Q. Would you consider your Cadillac back then to be the car that you used principally?

A. As my principal car.

Q. Would you consider that the times that you used Mrs. Brantley's automobile to be occasional—

MR. SMITH: Object as to the form.

A. Occasional.

Q. —as you understand the word occasional?

A. Yes.

In addition, the following excerpts from Mrs. Brantley's affidavit tend to support the Court's finding: "It was not customary for him to use my car except when he was relieving me of the driving duties ...";
"[H]e did not use it freely and often ...";
"[T]he only time my husband would drive my automobile would be with my permission. I have never known him to take my automobile without first asking me or making sure that I approved of his use of it."

While the Court assumes that some married couples would have routine access to one another's automobiles, apparently, such was not the case here. Based on the evidence before this Court, Allstate was obligated to defend and provide coverage for Mr. Brantley under the terms of the insurance agreement.

## IV.

■ Allstate also contends, in the alternative, that Unisun is not entitled to subrogation in this instance because of its failure to notify Allstate of the negotiation and eventual settlement of the underlying claims against Mr. Brantley. The Court notes from the outset that it has not been directed to a single Alabama statute or case which imposes such duty on an underinsured motorist carrier where the primary carrier has denied coverage. Nevertheless, Allstate argues that such a duty should be imposed by this Court based upon the reasoning set out in the case of *Allstate Insurance Company v. Amerisure Insurance Company*, 603 So.2d 961 (Ala. 1992), and the Alabama Supreme Court's general requirement that an insured has a duty to give notice to his insurance carrier of a proposed settlement with an underinsured motorist. *Lambert v. State Farm Mutual Automobile Insurance Co.*, 576 So.2d 160 (Ala.1991). For the reasons set out below, the Court declines to impose such duty in this case.

In *Lambert*, the Alabama Supreme Court held, among other things, that before a settlement between an insured and an underinsured motorist was final, reasonable notice that a claim would be filed must be given to the underinsured motorist carrier. The purposes of this requirement is to first protect the carrier's rights to subrogation against the tortfeasor, and second, to protect the carrier from possible collusion between its insured and the tortfeasor's liability insurer at the expense of the carrier. *Id.*, at 187. However, the situation described in *Lambert*, is far different from this one. When an insured settles a claim with an underinsured motorist the insured does so with the knowledge that his carrier will be the one which foots the bill. There is no reason for the insured to make wise decisions in the settlement process because neither he nor the underinsured motorist will ever have to answer for those decisions in a financial sense. Thus, the underinsured motorist carrier ought to have some chance to object to the terms of a settlement that it will ultimately be obligated to honor. Yet here, Unisun settled because it appeared (based on Allstate's letter to Brantley) that the tortfeasor had no more

coverage. Obviously, Unisun had no incentive to settle the claim for more money than it had to. In such a case, Allstate can hardly claim that they were prejudiced in the manner addressed by the *Lambert* Court. Therefore, the *Lambert* requirement for notice has no application to this case.

Similarly, the reasoning behind the Alabama Supreme Court's holding in *Allstate* does not compel this Court to render a judgment against Unisun. In that case, Morris Sherrill, an employee of Wadsworth Contractor's, Inc., was involved in an accident that occurred when one of Wadsworth's trailers that was attached to his personal truck came unhitched and rolled into another vehicle driven by Fred Demo. Demo subsequently brought a personal injury action against both Sherrill and Wadsworth.

Shortly after the suit was filed, Allstate, Sherrill's insurer, filed a separate declaratory judgment action against Amerisure, Wadsworth's insurer, in which it sought a judgment declaring that it was not obligated to defend or indemnify Sherrill in Demo's personal injury suit. In its answer to Allstate's complaint, Amerisure stated that it did have primary coverage for its policy holder Wadsworth, but that any coverage for Sherrill was secondary to Allstate's coverage. Shortly thereafter, Allstate filed a motion for summary judgment and the trial court granted that motion holding that Allstate was not obligated to cover Sherrill.

Following the trial courts entry of summary judgment in favor of Allstate, Amerisure appealed. However, during the time that the appeal was pending, Amerisure settled with Demo for the claims against Sherrill, Wadsworth, and Amerisure, and Demo agreed to dismiss his claims and to release all three defendants. In doing so, Amerisure did not inform the Supreme Court of its settlement, nor did it give notice to Allstate that it had any intention of seeking indemnity, contribution or subrogation from Allstate in a subsequent action should the Supreme Court reverse the Trial court's ruling.

Soon after the settlement was entered into, the Supreme Court reversed the trial court's ruling, and remanded the case to the trial

court holding that Allstate was obligated under its policy to provide coverage for the harm caused by the trailer. The Supreme Court did not address the question of which insurer had primary coverage for the accident.

On remand, Amerisure filed a counterclaim against Allstate seeking reimbursement for the sums it paid in the earlier settlement. The trial court entered summary judgment in Amerisure's favor and Allstate appealed. On appeal, Allstate argued that Amerisure was not entitled to either legal or equitable relief for two reasons; first, because Amerisure failed to preserve its right to proceed against Allstate when it did not give notice that it would seek reimbursement from Allstate and second, because Amerisure did not take steps to either postpone the settlement until the Supreme Court's opinion was released or ask for a continuance of the trial on the underlying liability claims. The Supreme Court agreed with Allstate's contentions and held that Amerisure had indeed forfeited its right to reimbursement for the cost of settlement because of its failure to give notice of its intentions, or to seek a postponement of the settlement.

In the present case, Allstate argues that Unisun has forfeited its right to subrogation based on the above holding of the Alabama Supreme Court. However, this Court finds that the relationship between Unisun and Allstate here is different from the relationship between Amerisure and Allstate in the above mentioned case. Here, Unisun is not a co-defendant with Allstate in the liability claim and it is not an original party to this declaratory judgment action. Unisun's sole duty in this case was to secure for its policy holder a prompt and just settlement for his claim. Allstate argues that Unisun should have given it notice of Unisun's intention to seek subrogation for the amount it paid to its policyholder, yet, Allstate knew that its refusal to provide coverage to Brantley would leave him underinsured, and Allstate further knew that Unisun could not neglect its own policy holder's need for recovery while this Court, solely for the benefit of Allstate, answered the question posed. Additionally, Allstate's argument that Unisun should have postponed its settlement or asked for a continuance in the underlying liability case is equally unpersuasive. As stated above, Unisun had the duty to represent its policyholder. Unisun had no duty to seek a postponement for the benefit of Brantley or his insurer of its policyholder's settlement or trial. Thus, while the Supreme Court's holding in *Allstate* is altogether correct given the relationship of the parties in that case, that holding has no application to the present case and is not authority upon which to deny Unisun's claim for subrogation.

## V.  CONCLUSION

Accordingly, it is CONSIDERED and ORDERED that summary judgment for Plaintiff Allstate is due to be, and the same is hereby, DENIED. It is further CONSIDERED and ORDERED that summary judgment is due to be, and the same is hereby, GRANTED in favor of Intervenor Unisun on its claim for subrogation and attorneys' fees relating to the settlement with Marion Brantley.

Jurisdiction is retained in the event the parties cannot arrive at a sum representing reasonable attorneys' fees.

All costs herein incurred, including reasonable attorneys' fees, are hereby taxed against the plaintiff Allstate Insurance Company, for which let execution issue.

DONE.