Paul DEMYAN, Plaintiff,

v.

SUN LIFE ASSURANCE COMPANY OF CANADA, Defendant.

No. 99–7384CIV–FERGUSON.

United States District Court, S.D. Florida.

April 11, 2001.

George William Allen, Jr., Fort Lauderdale, FL, for Plaintiff.

John Edward Meagher, Jeffrey Mark Landau, Shutts & Bowen, Miami, FL, for Defendant.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

FERGUSON, District Judge.

This action arises from a claim for disability benefits under an insurance policy issued by Sun Life Assurance Company of Canada ("Sun Life") as part of a group benefit plan covering employees of Keystone Pipeline Services, Inc. ("Keystone") where Paul Demyan ("Demyan") was employed, Demyan made a claim for benefits asserting that he was totally disabled. Sun Life denied the claim. Demyan sued. This cause is before the Court on the Defendant Sun Life's Motion for Summary Judgment [D.E.22].

### Issue Presented

The dispositive question presented is whether a decision by the insurer to deny long term disability benefits is reasonable based on evidence in the claim file which includes a determination by an oncologist that the employee's cancer has not recurred following surgery, an opinion of the employee's cardiologist that the employee is unable to return to work because of the residual effects of the cancer surgery and radiation, and an evaluation by the employer that the employee is physically unable to perform all functions of the job.

### Factual Background

Sixty-two (62) year-old Demyan was employed by Keystone, a subsidiary of Pennsylvania Enterprises, Inc. ("PEI"), as a construction project coordinator. His managerial responsibilities included writing crew orders, resolving worker conflicts, supervising fifteen (15) employees, monitoring crews at work sites, evaluating equipment, liaison with customers and training new employees.

According to medical records Demyan, a long time heavy smoker, first experienced problems with his throat in the summer of 1996. A biopsy was performed

in September 1996 which revealed malignant tissue. Radical surgery was performed by Dr. W. Jarred Goodwin at the University of Miami's Sylvester Comprehensive Cancer Center (the "Cancer Center"). The procedure included a tracheostomy which involved an incision to the trachea for making an artificial breathing hole. Afterwards there was a laser supralottic laryngectomy which involved the surgical removal of all or part of the larynx. Radiotherapy was discontinued in January 1997. Satisfied with the surgical outcome, Dr. Stella Ling ("Dr.Ling"), another oncologist and assistant professor at the Cancer Center, authorized Demyan's return to work on February 13, 1997. In the family history part of a report Dr. Ling noted that Demyan's father, mother, brother and sister all died from cancer.

In subsequent reports, made between March 1997 and December 1997, Dr. Ling noted that the side effects of the cancer and treatments included "significant dry mouth secondary to radiation effects to his salivary glands ... decreased range of motion.... tension headaches.... considerable tiredness ... and considerable hoarseness of his throat." Demyan told her that the physical problems made it difficult to perform on the job. On August 14, 1997, Dr. Ling wrote a letter to a state court requesting that Demyan be excused from jury duty and on October 15, 1997, wrote another to "Whom it May Concern" asking that he be allowed to "carry fresh water ... in order to relieve his [dry mouth]." In some of her notes she wrote "there is no evidence of recurrence of the disease." The notes are silent, however, as to whether the significant side effects, *noted after she first authorized Demyan's return to work*, would necessitate a reassessment of his physical ability.

Dr. John Stathis ("Dr.Stathis") records as to the side effects of the disease and surgery agree with Dr. Ling's—weakness, hoarseness, and dry mouth. He notes further that following the surgery Demyan lost 37 pounds—from 210 to 173 pounds—and is unable to regain the weight. In a March 6, 1998, report he noted that Demyan "is unable to do much activity because of his marked weakness and weight loss."

On May 8, 1998, Keystone's Insurance Manager submitted, on Sun Life's forms, several claims documents which included the Employer's Statement, the Employee's Statement and the Statement of the Attending Physician. All the statements are consistent with a finding of a total disability. The employer's statement, executed by the Director of Human Resources, notes the demands of the job, the rugged environment of construction sites, and that Demyan last worked on November 7, 1997, leaving because he "[c]ould not perform functions of the position [as a result of] throat cancer."[1] In the Attending Physician's Statement Dr. Stathis describes the limitations as "severe weakness, [and] inability to communicate because of vocal problems." In the Prognosis section of the form report he notes that Demyan has "Retrogressed." The Work Capabilities section of the form asks whether the patient is capable of performing any occupation on a full-time basis to which the physi-

---

1. Elaborating on the employee's condition and the employer's decision William J. Milstead, Demyam's supervisor, testified that "the company felt that he was not able to do his job" and that he "had discussions with Paul about his ... difficulty in doing his job." Milstead added, in deposition testimony, that "it was a mutual decision on both our parts"

that Demyan leave on November 7, 1997, because of his failing health. No weight is given to this testimony because it was not available to the administrator. Nevertheless, it is entirely consistent with the employer's statements or reports which are part of the claim file.

cian answered "No." In that section of the form he also notes that the disability began in November 1997—nine (9) months after Dr. Ling authorized Demyan's return to work.

*The Policy*

In December 1995 PEI's long term disability insurance policy, issued by Sun Life, was amended to cover Keystone and its employees as part of an employee benefits package. Demyan became eligible for coverage in 1996.

The Policy states in relevant part:

Long Term Disability—An Employee is totally disabled if he is in a continuous state of incapacity due to Illness which

1. while it continues through the Elimination Period and during the following 36 months of incapacity, prevents him from performing the material and substantial duties of his regular occupation; and

2. while it continues thereafter, prevents him from performing the material and substantial duties of any occupation for which he is or becomes qualified by education training or experience.

Ceasing to be Actively at Work does not, by itself, mean that an Employee is Totally Disabled.

The Elimination Period "begins with the Employee's first day of Disability and ends after an uninterrupted Disability period of 180 days." Demyan's disability began November 7, 1997, with the elimination period running through May 5, 1998. Regarding the filing of a Proof of Claim, the Policy provides: "We must receive written proof of claim within certain time limits .... The proof, which must be satisfactory to us, is to be given to us at our Office."

On November 16, 1997, Demyan was paid a lump sum for Short Term Disability/Sick Leave. He filed the claim for long term disability in May 1998 after expiration of the Elimination Period. On July 8, 1998, Sun Life denied the claim stating it was doing so "based on the records in the file, and ... the medical review ...." In denying the claim the insurer expressly relied on Dr. Ling's February 1997 authorization to return to work and her assessment that there was no recurrence of the disease.[2]

**Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, a fact is "material" if it might affect the outcome of the suit under the governing substantive law. *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505.

In considering this motion for summary judgment, the Court must examine "whether the evidence presents a sufficient

---

**2.** In a letter of July 8, 1998, denying Demyan's claim for long term disability benefits Sun Life's Associate Claims Administrator wrote:

"[m]edical information received from Dr. Ling indicates that you were released to return to work in February of 1997. Information received indicates that there was no residual disease in November of 1997, when you stopped working, and that the restriction placed on you by Dr. Ling, to drink plenty of water, does not prevent you from performing your regular occupation and, therefore, no benefits will be provided."

disagreement to require submission to a jury or whether it is so one-sided that the defendant should prevail as a matter of law." *Id.* at 243, 106 S.Ct. 2505. The movant bears the initial burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether the movant has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-movant. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1532 (11th Cir. 1992). "If reasonable minds could differ on the inferences arising from undisputed facts, summary judgment should be denied." *Id.* at 1534.

Once the initial burden is met, the non-movant must come forward with specific facts showing that there is a genuine issue for trial that precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial. *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991). Likewise, "a mere scintilla of evidence supporting a position will not suffice: there must be enough of a showing that the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Failure to make a showing sufficient to establish the existence of any essential element of a claim is fatal and requires the entry of summary judgment. *Celotex Corp.,* 477 U.S. at 322–323, 106 S.Ct. 2548.

## Discussion

■ The parties devote considerable argument to the clarity of the policy language regarding filing and proving a claim and the standard the court must apply in reviewing an insurer's denial of a claim. Any uncertainty that may have existed in this circuit on the two points was laid to rest in *Jett v. Blue Cross and Blue Shield of Alabama,* 890 F.2d 1137 (11th Cir.1989). There the Court held that (1) the administrator of an employee benefit plan, where so provided by the language of the plan, has the discretionary authority to construe the plan's terms and to determine eligibility for benefits, and (2) when conducting a review of a denial of benefits the court shall apply an arbitrary and capricious standard which is sometimes used interchangeably with an abuse of discretion standard. It was held in *Jett* that the trial court conducted an improper *de novo* review of the plan administrator's decision where it considered evidence ˙unavailable to the administrator at the time the decision was made.

■ No ambiguity is to be found in the policy language. It provides, with certainty, that the proof of claim must be filed within the time limits fixed by the plan and that the proof must be satisfactory to the administrator. Neither is there any uncertainty regarding the standard of review; this court must apply the arbitrary and capricious standard of review and is confined to materials which were available to the administrator when the claim was denied. As long as there is a reasonable basis for the administrator's decision it must be upheld even if there is evidence that would support a contrary decision. *Jett,* 890 F.2d at 1140.

■ After a thorough review of the voluminous materials which were available to the administrator this court finds no reasonable basis for the administrator's decision to deny Demyan's claim. Dr. Ling authorized Demyan's return to work, perhaps therapeutically, less than a month after surgery and radiotherapy to remove cancerous throat tissue. The debilitating effects of the disease and treatment were not fully manifested until after Demyan's

attempt to resume the duties of the job. Dr. Stathis, the attending physician, first noted the side effects beginning in March 1997. Dr. Ling agreed, later, that Demyan suffered distressful post-surgery side effects which necessitated accommodations for normal life activities but never expressed an opinion whether he could return to the vigorous job as a construction projects supervisor. Demyan's physical retrogression over a nine month period following the surgery is well documented in the record—without contradictory evidence.

Too much weight is given to the statements attributed to Dr. Ling that "there was no residual disease in November of 1997 ...." A determination by a physician that the surgery was a success does not remotely answer the question whether the patient is left in a state of continuous physical incapacity. It has been long recognized that, medically speaking, surgery may be deemed successful even if the patient dies. The focus here, as it is in most general disability cases where the denial of benefits is challenged, is on whether the patient is left with limitations which render him unable to "'perform all substantial and material acts necessary to the prosecution of some gainful business or occupation.'" *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998)(quoting *Hammond v. Fidelity & Guar. Life Ins. Co.*, 965 F.2d 428, 431 (7th Cir.1992)); *see, also, Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir.1999). That question was answered here by the attending physician in describing the limitations and prognosis, and by the employer who decided that the demands of the job were more than the employee could handle in light of observable limitations.

Sun Life makes a fall-back argument that Demyan's resignation from employment was unrelated to his disability and was instead consistent with a planned retirement. The contention is based on a note by the treating physician that Demyan "is going to retire from work," written on December 7, 1997, *after* the employer had decided that Demyan could not perform the duties of the job and *after* the treating physician had determined that he could never return to any employment because of physical disabilities. The inference drawn by Sun Life from the doctor's note is totally inconsistent with the direct evidence, provided by the employer and the same treating physician, that Demyan could no longer perform the duties of a construction project supervisor with onsite responsibilities.

**Conclusion**

Having applied the arbitrary and capricious standard to the evidence which was before the plan administrator it is concluded that the decision to deny Demyan's claim for benefits was completely unreasonable because it is not supported by any fair interpretation of the evidence. Accordingly, the defendant's Motion for Summary Judgment [D.E.22] is **DENIED.**

Although the plaintiff has not filed a cross-motion for summary judgment the findings of fact made here, based on the uncontroverted evidence, support a judgment for the plaintiff. In fact the evidence is so one-sided that Demyan should prevail as a matter of law. A court has authority to grant a cross-motion for summary judgment to the nonmoving party, where appropriate, after denying summary judgment for the movant. F.R.Civ.P. 54(c); *Pollock v. Birmingham Trust Nat'l Bank*, 650 F.2d 807, 812 (5th Cir.1981). Accordingly, summary judgment for the plaintiff is **GRANTED.**

Any pending motions not ruled upon are rendered moot by this final summary judgment.

**This case is closed.**